[844 NE2d 721, 811 NYS2d 267]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SANTOS SUAREZ, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TRISHA MCPHERSON, Appellant.

Argued November 16, 2005; decided December 22, 2005

**POINTS OF COUNSEL**

*Center for Appellate Litigation,* New York City (*Mark W. Zeno* and *Robert S. Dean* of counsel), for appellant in the first above-entitled action. The evidence in this archetypal one-on-one stabbing homicide was insufficient to establish that appellant had committed depraved indifference second-degree murder as defined in *People v Payne* (3 NY3d 266, 272 [2004]). (*People v Gonzalez,* 1 NY3d 464; *People v Robinson,* 145 AD2d 184, 75 NY2d 879; *People v Harrison,* 85 NY2d 891; *People v Roe,* 74

NY2d 20; *People v Jernatowski,* 238 NY 188; *People v Gomez,* 65 NY2d 9; *People v Sanchez,* 98 NY2d 373; *People v Hafeez,* 100 NY2d 253; *People v Poplis,* 30 NY2d 85; *People v Bryce,* 88 NY2d 124.)

*Robert T. Johnson, District Attorney,* Bronx (*Jonathan Zucker, Joseph N. Ferdenzi* and *Peter D. Coddington* of counsel), for respondent in the first above-entitled action. The evidence in this case supports the jury's verdict that this murder was both reckless and depraved. (*People v Sanchez,* 98 NY2d 373; *People v Hafeez,* 100 NY2d 253; *People v Gonzalez,* 1 NY3d 464; *People v Payne,* 3 NY3d 266; *People v Roe,* 74 NY2d 20; *People v Bleakley,* 69 NY2d 490; *People v Mills,* 1 NY3d 269; *People v Best,* 85 NY2d 826; *People v Poplis,* 30 NY2d 85; *People v Kibbe,* 35 NY2d 407.)

*Warren S. Landau,* New York City, and *Lynn W.L. Fahey* for appellant in the second above-entitled action. I. The People failed to prove that appellant acted "under circumstances evincing a depraved indifference to human life" when, after her former boyfriend pushed her during a one-on-one confrontation, she drew a knife with a four-inch blade, inflicted a single two-inch knife wound to his chest, and immediately called 911 to summon assistance for him. (*People v Payne,* 3 NY3d 266; *People v Roe,* 74 NY2d 20; *People v Smith,* 255 AD2d 404; *Jackson v Virginia,* 443 US 307; *In re Winship,* 397 US 358; *People v Gonzalez,* 1 NY3d 464; *People v Hafeez,* 100 NY2d 253; *People v Harrison,* 85 NY2d 891; *People v Robinson,* 145 AD2d 184, 75 NY2d 879; *People v Jernatowski,* 238 NY 188.) II. Among other things, trial counsel's failure to investigate, obtain readily available corroborative evidence, or otherwise adequately prepare the battered woman defense he presented, denied appellant the effective assistance of counsel. (*Kimmelman v Morrison,* 477 US 365; *Strickland v Washington,* 466 US 668; *People v Stultz,* 2 NY3d 277; *People v Baldi,* 54 NY2d 137; *People v Droz,* 39 NY2d 457; *People v Brown,* 45 NY2d 852; *People v Bennett,* 29 NY2d 462; *Coles v Peyton,* 389 F2d 224; *Wiggins v Smith,* 539 US 510; *Williams v Taylor,* 529 US 362.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Sholom J. Twersky, Leonard Joblove* and *Anne C. Feigus* of counsel), for respondent in the second above-entitled action. I. The evidence was legally sufficient to establish defendant's guilt of depraved indifference murder beyond a reasonable doubt. (*People v Sanchez,* 98 NY2d 373; *People v Payne,* 3 NY3d 266; *People v*

*Register,* 60 NY2d 270, 466 US 953; *Jackson v Virginia,* 443 US 307; *People v Rossey,* 89 NY2d 970; *People v Contes,* 60 NY2d 620; *People v Ford,* 66 NY2d 428; *People v Gaimari,* 176 NY 84; *People v Hafeez,* 100 NY2d 253; *People v Gomez,* 65 NY2d 9.) II. Defendant received the effective assistance of trial counsel. (*People v Benevento,* 91 NY2d 708; *People v Satterfield,* 66 NY2d 796; *People v Baldi,* 54 NY2d 137; *People v Rivera,* 71 NY2d 705; *People v Hobot,* 84 NY2d 1021; *People v Benn,* 68 NY2d 941; *People v Berroa,* 99 NY2d 134; *Strickland v Washington,* 466 US 668; *People v Caban,* 5 NY3d 143; *People v Aiken,* 45 NY2d 394.)

**OPINION OF THE COURT**

Per Curiam.

These two appeals call upon the Court, once again, to differentiate depraved indifference murder from other categories of homicide. We begin with the facts.

*People v Suarez.* On February 22, 2000, in their Bronx apartment, defendant Santos Suarez stabbed his girlfriend, Jovanna Gonzalez, three times—once in the throat, once in the chest and once in the abdomen. Suarez fled without summoning assistance, and Gonzalez eventually bled to death.

When Suarez was arrested six days later in Rhode Island, he told police that he had slapped Gonzalez in the face during an argument, and that she had then lunged at him with a knife, scratching him in the chest. Suarez wrested the knife away and, "outraged" that Gonzalez had called for her son, lunged back at her. According to Suarez's account, when he pulled back, he saw that Gonzalez was bleeding from the neck. He claimed, however, that he could not remember what happened next. Suarez was indicted for intentional murder, depraved indifference murder, intentional manslaughter and criminal possession of a weapon in the fourth degree. At his trial, he testified that he never intended to kill Gonzalez. Charged on the defense of justification and the affirmative defense of extreme emotional disturbance, the jury acquitted Suarez of intentional murder but convicted him of depraved indifference murder. The Appellate Division affirmed defendant's conviction, holding that the evidence was legally sufficient to establish guilt of depraved indifference murder.

*People v McPherson.* On February 12, 2000, defendant Trisha McPherson went to the Brooklyn home of Kirk Wright, her former boyfriend and the father of her child. According to McPher-

son, after she and Wright argued over child support, Wright pushed her. When Wright then raised his hand as if to hit her, McPherson unzipped her purse, pulled out a knife, opened the knife and swung it at Wright, stabbing him once in the chest. When she saw that Wright was bleeding, McPherson immediately called 911 and requested an ambulance. Before the ambulance arrived, McPherson left the scene. Wright was transported to a hospital, where he bled to death from the stab wound. At her nonjury trial for depraved indifference murder, first-degree manslaughter and fourth-degree weapon possession, McPherson testified that she had been a long-suffering victim of domestic violence at the hands of Wright, and that she was acting in self-defense when she killed him. The court, however, rejected her justification defense and found her guilty of depraved indifference murder. Again the Appellate Division affirmed defendant's conviction, holding that the evidence was legally sufficient to establish guilt of depraved indifference murder.

In each case—*McPherson* by a unanimous court, *Suarez* by a six-Judge majority—we conclude that there was no depraved indifference murder, and therefore reverse both convictions.

### The Statutory Categories of Homicide

With the adoption of the revised Penal Law in 1965, the Legislature codified five basic categories of homicide, which have remained essentially unchanged since that time: intentional murder in the second degree (Penal Law § 125.25 [1]),[1] depraved indifference murder in the second degree (Penal Law § 125.25 [2]), intentional manslaughter in the first degree (Penal Law § 125.20 [1]), reckless manslaughter in the second degree (Penal Law § 125.15 [1]) and criminally negligent homicide (Penal Law § 125.10). Although the culpable acts in each case culminate in the same tragic result—the death of another—these crimes, each necessarily meant to proscribe different conduct, are distinguished by the level of blameworthiness attributable to the actor who commits them. Intentional murder and depraved indifference murder are equivalent in that both are classified at the highest grade and carry the same penalty; other categories of homicide, lesser in grade, are punished less severely. In so classifying the range of unlawful killings

---

1. Certain enumerated aggravating factors elevate intentional murder in the second degree to murder in the first degree (Penal Law § 125.27 [1]).

condemned by the criminal law, the Legislature has enacted a statutory system in which each category of homicide is defined uniquely and distinctly from every other, thus ensuring that a killer's punishment is commensurate with the degree of criminal culpability established by the Penal Law.

What precisely distinguishes depraved indifference murder from other homicides has of late generated significant discussion,[2] as the number of indictments for depraved indifference murder—often charged in conjunction with intentional murder—has increased dramatically. Whether because jurors conclude that anyone who would intentionally take a life is depraved, or because they mistakenly believe that depraved indifference murder is a lesser offense than intentional murder and are reluctant to convict of the "most serious" charge, the availability of a depraved indifference murder count has led juries to convict of that charge even though the evidence did not support it (*see e.g. People v Hafeez*, 100 NY2d 253 [2003]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Payne*, 3 NY3d 266 [2004]; *see also Policano v Herbert*, 430 F3d 82 [2d Cir 2005]).

The proliferation of the use of depraved indifference murder as a fallback theory under which to charge intentional killers reflects a fundamental misunderstanding of the depraved indifference murder statute. "[D]epraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" (*Payne*, 3 NY3d at 270). Rather, because the statute requires "circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]), depraved indifference murder properly applies only to a small, and finite, category of cases where the conduct is at least as morally reprehensible as intentional murder. The cases now before us, two additional examples of the misapplication of the depraved indifference murder statute, compel us—for now and for the future—to revisit what is unique and distinctive about

---

2. *See e.g.* Abraham Abramovsky and Jonathan I. Edelstein, *Depraved Indifference Murder Prosecutions in New York: Time for Substantive and Procedural Clarification*, 55 Syracuse L Rev 455 (2005); Paul Shechtman, Outside Counsel, *The Meaning of Depraved-Indifference Murder: New Legislation?*, NYLJ, Apr. 4, 2005, at 4, col 4; Brian F. Allen, *A Step in the Right Direction: People v. Hafeez, Stopping the Expansion of Depraved Indifference Murder in New York State*, 18 St John's J Legal Comment 875 (2004); Peter Dunne, *Is There Life Left in Depraved Indifference Murder?*, 2 NY Crim L Newsl [No. 4] 5 [NY St Bar Assn, Fall 2004]; *see also* Bernard E. Gegan, *More Cases of Depraved Mind Murder: The Problem of Mens Rea*, 64 St John's L Rev 429 (1990).

that crime as defined by the Legislature. The purpose here is not to take anything away from juries (*see* concurring/dissenting op at 227)—a valued and essential element of our justice system—but rather to provide the guidance that will enable prosecutors, juries, trial courts and reviewing courts to function without risk of reversal.

### Distinction from Intentional Murder

According to Penal Law § 125.25 (2), a person commits depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

■ That taking the life of another can itself, in a sense, be considered a "depraved" act does not, however, turn every killing into depraved indifference murder as proscribed by the Penal Law. We thus begin by once again underscoring that the "use of a weapon can never result in depraved indifference murder when . . . there is a manifest intent to kill" (*Payne*, 3 NY3d at 271 [2004] [point-blank shooting insufficient to establish depraved indifference murder]). That is so because "[i]ndifference to the victim's life . . . contrasts with the intent to take it" (*id.* at 270). The People concede this proposition, but seek to distinguish *Suarez* from *Payne*, and from *Gonzalez* (1 NY3d 464 [2004] [10 shots fired at close range]), because in those cases the defendant used a gun, whereas here he used a knife. Thus, despite *Payne*'s plain statement that "a one-on-one shooting *or knifing* (or similar killing) can almost never qualify as depraved indifference murder" (3 NY3d at 272 [emphasis added]), the People maintain that a jury could reasonably have concluded that Suarez's infliction of stab wounds to the throat, chest and abdomen of his victim reflected not an intent to kill but merely an intent to seriously injure her.

If the prosecution meant by this nothing more than that the evidence would have supported defendant's conviction for intentional murder—despite the jury's acquittal of that charge—as well as his conviction for intentional manslaughter in the first degree, we would agree. However, the People contend further that the evidence here also established depraved indifference murder, on the theory that Suarez's actions in stabbing the victim created a grave risk of her death—a risk that he consciously disregarded when he failed to seek medical assistance for the injuries he intentionally inflicted and instead left her there to die.

"That is not the law. If it were, every homicide, particularly intentional ones, would be converted into depraved indifference murder" (*Payne*, 3 NY3d at 270; *see also People v Hafeez*, 100 NY2d 253, 259 [2003] [where defendant's conscious objective was to "intentionally injur(e)" the victim, there was "no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder"]).

Indeed, the flaw in the People's argument is perhaps best demonstrated by comparing *Suarez* with *McPherson*. In *Suarez*, the People maintain that depraved indifference is established by the defendant's intentional infliction of a mortal wound, followed by his flight from the scene of the killing. Because the defendant left the bleeding victim still alive without "finishing her off," we are told, he must not have intended her death (which in turn exempts the case from the "manifest intent to kill" rule of *Payne*). But since he did nothing to save her, his actions, we are further told, reflected a depraved indifference to her life.[3] In *McPherson*, by contrast, we are told that the defendant's conduct in calling for an ambulance after discovering that her victim had been wounded in itself reflected depraved indifference. For, the argument goes, her very actions in summoning assistance show that she did *not* intend for the victim to die. That being so, her crime (the People assert) must have been one of indifference, not of intentionality; and since the risk of death created by a chest wound is a grave one, the depraved indifference murder statute is satisfied.

When the People can make, and courts can accept, arguments in which both the rendering of assistance and the failure to render assistance serve to establish depraved indifference, there must be a fundamental misapprehension of the concept of the crime.

---

3. Thus, under the People's theory, a defendant who plainly intended to kill the victim, and who succeeded, may be prosecuted only for intentional murder. But an inept defendant, who commits precisely the same acts with the intent to kill, but who fails to kill the victim right away and instead flees the scene of the attempted intentional homicide, will—despite having engaged in identical conduct with an identical mental state—have committed depraved indifference murder when the victim later dies. We cannot agree with this proposition. It is the rare killer indeed who, after inflicting a mortal wound intended at a minimum to cause serious physical injury, lingers at the scene of the crime or summons aid. "The People's tautology, if accepted, would improperly convert every intentional homicide" that does not succeed in bringing about the victim's immediate death into depraved indifference murder (*Gonzalez*, 1 NY3d at 468).

The People's argument is flawed on two grounds. First, a killing (whether intentional or unintentional) is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim. Otherwise, homicides would be routinely and improperly converted into depraved indifference murders whenever—as is often the case—the killer leaves the scene. Even more obviously, a killing does not become a depraved indifference murder merely because the killer summons aid and thus reveals an intent that the victim not die. Surely, a killer does not commit depraved indifference murder just because he or she wants the victim to live. Second, and irrespective of what the actor does or does not do after inflicting the fatal injury, depraved indifference murder is not made out unless the core statutory requirement of depraved indifference is established.

> "Depraved indifference murder does not mean an extremely, even heinously, intentional killing. . . .

> "When a defendant's conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant. Nor can the wanton disregard for human life inherent in every intentional homicide convert such a killing"

into depraved indifference murder (*Gonzalez*, 1 NY3d at 468).

### Distinction from Intentional Manslaughter

Historically, depraved indifference murder had no application at all to one-on-one killings (*see generally* Bernard E. Gegan, *A Case of Depraved Mind Murder*, 49 St John's L Rev 417 [1974]). Accordingly, in *Darry v People* (10 NY 120 [1854]), this Court held that a conviction for "depraved mind"[4] murder required conduct that endangered many people indiscriminately, reflecting cases in which the defendant did not wish to kill or injure any particular individual, but had no care for whether the life of any particular person was lost or not.

Since the enactment of the revised Penal Law, however, we have recognized that in rare circumstances, depraved indifference murder can also be found in certain *unintentional* killings involving only a single individual. These limited cases are those

---

4. We note that the statute no longer refers to depraved "mind" murder. Continuing to describe the crime in those terms improperly detracts from the current statute's requirement of *indifference*.

in which—although the intent to kill is absent—the defendant's utter depravity in causing the victim's death warrants punishment in excess of that available for manslaughter. Such cases will arise only when the acts of the defendant are "marked by uncommon brutality—coupled not with an intent to kill . . . but with depraved indifference to the victim's plight" (*Payne*, 3 NY3d at 271). To constitute depraved indifference, the defendant's

> "conduct must be ' "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" ' " (*People v Russell*, 91 NY2d 280, 287-288 [1998], quoting *People v Fenner*, 61 NY2d 971, 973 [1984]).

The vast majority of killings simply do not meet this standard. They are suitably punished by statutes defining intentional murder or manslaughter in the first or second degree or criminally negligent homicide.

Depraved indifference murder is not a lesser degree of intentional murder.[5] Moreover, someone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. By definition, "[s]erious physical injury" includes injury "which creates a substantial risk of death, or which causes death" (Penal Law § 10.00 [10]). Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder—a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent"— depravedly or otherwise—to the fate of that person, we underscore what we said in *Payne*: "a one-on-one shooting or

---

5. It was therefore misleading for the prosecutor in *Suarez* to request in summation that the jury "find [defendant] guilty of Intentional Murder, *or at the very least*, that he acted with such depraved indifference that he disregarded her human life" (emphasis added).

knifing (or similar killing) can almost never qualify as depraved indifference murder'' (3 NY3d at 272).[6]

A defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances. Two fact patterns have recurred over the past four decades of experience under the revised Penal Law. First, when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die, the defendant's utter callousness to the victim's mortal plight— arising from a situation created by the defendant—properly establishes depraved indifference murder. Thus, in *People v Kibbe* (35 NY2d 407 [1974]), the defendants were properly convicted of depraved indifference murder after they robbed an intoxicated victim and forced him out of a car on the side of a dark, remote, snowy road, partially dressed and without shoes in subfreezing temperatures, where he was struck by a passing truck and killed. Similarly, in *People v Mills* (1 NY3d 269 [2003]), the defendant, without intent to harm or kill his victim, pushed a young boy into the water, watched him submerge without resurfacing (either because the boy had accidentally struck his head or because of an epileptic seizure), falsely informed his friends in response to their cries to help the victim that he was in fact swimming away, and abandoned the drowning boy to die.

Second, although we have reversed depraved indifference murder convictions in most cases involving isolated attacks, we have held that the crime is nevertheless established when a defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim. When a defendant's actions serve to intensify or prolong a victim's suffering, they bespeak a level of cruelty that establishes

---

**6.** Of course, a one-on-one dispute will not always reflect a manifest intent to kill or injure. Rather, we make clear only that whether the infliction of serious or fatal injury was intended or not, such a confrontation can almost never support a finding of depraved indifference. It is up to the jury to decide in a particular case whether the defendant acted intentionally, or recklessly, or negligently (or not at all). Indeed, in *McPherson*—a one-on-one confrontation—the evidence was certainly sufficient to support a finding of reckless manslaughter, although not of depraved indifference murder. Nor do we make any absolute pronouncement "that a person who stabs someone with a knife cannot act with 'a depraved indifference to human life' " (concurring/ dissenting op at 219).

the depravity mandated by statute. Thus, in *People v Poplis* (30 NY2d 85 [1972]), the defendant committed depraved indifference murder when, albeit without any intent to kill, he caused the death of a 3¹/₂-year-old infant as a result of continually beating the child over a period of five days (*see also People v Best*, 85 NY2d 826 [1995], *affg* 202 AD2d 1015 [4th Dept 1994] [defendant's repeated severe beatings of her nine-year-old son caused large open wounds resulting in blood poisoning and ultimately death by asphyxiation; depraved indifference murder established since defendant continued beatings though aware of child's condition]).

Both of these categories of cases reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts. We have also upheld convictions for depraved indifference murder in a few other extraordinary cases involving conduct that endangered only one person, where the evidence showed not just recklessness, but depraved indifference to human life (*see e.g. People v Roe*, 74 NY2d 20 [1989] [defendant fired at point-blank range without knowing whether the bullet was a "live" or "dummy" round]). Where comparable facts are not shown, however, a jury is foreclosed, as a matter of law, from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation.[7]

## Distinction from Reckless Manslaughter

Reckless homicide cannot be elevated into depraved indifference murder merely because the actions of the defendant created a risk of death, however grave or substantial that risk may have been. Otherwise, manslaughter in the second degree would routinely and automatically become depraved indifference murder inasmuch as the victim (who was, after all, killed) was necessarily exposed to a grave or substantial risk of death. The crit-

---

**7.** Moreover, the mere presence of third persons at the scene of a killing does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are *actually endangered*. Thus, in *Gonzalez*, although the defendant, after shooting the victim, "waved the gun at the only eyewitness—the barber—warned him not to say anything and walked out the door" (1 NY3d at 466), the evidence was legally insufficient to establish depraved indifference murder despite the presence of the barber in the shop at the time of the shooting (*see also People v Sanchez*, 98 NY2d 373 [2002] [depraved indifference murder conviction upheld because "others were endangered" (*Payne*, 3 NY3d at 272)]).

ical statutory language that separates second-degree manslaughter from depraved indifference murder is the defendant's underlying *depraved indifference*. "[C]ircumstances evincing a depraved indifference to human life" are not established by recklessness coupled only with actions that carry even an inevitable risk of death.

We therefore make clear that depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not. Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy" as to render the actor as culpable as one whose conscious objective is to kill (*Russell*, 91 NY2d at 287 [internal quotation marks omitted]).[8] Quintessential examples are firing into a crowd (*see e.g. People v Jernatowski*, 238 NY 188 [1924]); driving an automobile along a crowded sidewalk at high speed (*see People v Gomez*, 65 NY2d 9 [1985]); opening the lion's cage at the żoo; placing a time bomb in a public place; poisoning a well from which people are accustomed to draw water; opening a drawbridge as a train is about to pass over it and dropping stones from an overpass onto a busy highway.

Oftentimes it will not be easy to determine whether a defendant's conscious objective was to kill or merely to injure a victim. But those are the hard choices to be weighed by the trier of fact. Depraved indifference murder was never meant as a fallback crime enabling courts and juries to avoid making these difficult decisions. We therefore make clear that the statutory provision that a defendant act "[u]nder circumstances evincing a depraved indifference to human life" constitutes an additional requirement of the crime—beyond mere recklessness and risk—which in turn comprises both depravity and indifference, and that a jury considering a charge of depraved indifference murder should be so instructed (*see People v Register*, 60 NY2d 270, 276 [1983] [depraved indifference murder statute "requires in

---

**8.** By contrast, in authorizing lesser punishment for the crime of manslaughter in the first degree, the Legislature specifically determined that the intentional infliction of serious injury resulting in death is *not* so blameworthy "as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" (*id.* at 287-288 [internal quotation marks and citations omitted]).

addition not only that the conduct which results in death present a grave risk of death but that it also occur '(u)nder circumstances evincing a depraved indifference to human life' "]).

We depart slightly from the *Register* formulation, however, in that we make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk. As the present cases illustrate, to focus, as the dissent does, on only the degree of risk presented by a defendant's reckless actions gives insufficient guidance to prosecutors, courts and juries struggling to distinguish between these very different crimes. For with the critical inquiry thus cast, it becomes difficult for trial and appellate courts to determine as a matter of law whether given conduct has established a *very* substantial or merely substantial risk of death, particularly because this determination must, by definition, always be made with the hindsight that the endangered victim did in fact die. That being so, it is hard for a court exercising meaningful review ever to deny that the jury could reasonably have concluded that the defendant's conduct must have created a very substantial (i.e., grave) risk of death, since it actually succeeded in causing death.

Although the dissent proclaims its faith in the ability of jurors to make the fine distinction between "a grave, transcendent risk of death justifying a conviction of second-degree murder or a substantial risk of death warranting a manslaughter conviction" (dissenting/concurring op at 227), it also concludes that there was no rational view of the evidence to support the conclusion that McPherson demonstrated a depraved indifference to the victim's life. But of course, the trial judge found otherwise, and was affirmed by the Appellate Division.

When depraved indifference murder is properly understood, "twin-count" indictments—charging both intentional homicide and depraved indifference murder—should be rare. Twin-count submissions to a jury, even rarer. For by the time the proof has been presented, it should be obvious in most cases whether or not the evidence establishes "an intentional [killing] or no other" (*People v Wall*, 29 NY2d 863, 864 [1971]). Thus, where twin-count indictments are lodged, trial courts should presume "that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts" (Abramovsky and Edelstein, 55 Syracuse L Rev at 491).

In sum, whether a small, finite or rare category, depraved indifference murder should not be routinely charged to a jury.

Focus on the three statutory factors that distinguish depraved indifference murder—"circumstances evincing a depraved indifference to human life," recklessness and "a grave risk of death to another person"—should again make clear that the statute properly applies only to the unusual case.

## Application of the Law to the Facts

■ ■ In *Suarez*, defendant's acts in stabbing his victim in the throat, chest and abdomen did not, as a matter of law, constitute depraved indifference murder. Whether he intended to kill her or merely to cause her serious injury—and either of these findings, supported by sufficient evidence, might have been properly made by the jury—defendant's actions in no way reflected a depraved indifference to her fate.[9] In *McPherson*, defendant's conduct may have reflected recklessness but did not fall within the small, and finite, category of cases evidencing utter depravity, uncommon brutality and inhuman cruelty required for depraved indifference murder. We reject defendant McPherson's further contention that she was denied the effective assistance of counsel at her trial.

## Remittitur

In their briefs to this Court, the parties focused their arguments on the merits, and not on the question of remedy in the event of a reversal. Inasmuch as the Appellate Division, in affirming in each case, had no occasion to address the significant legal arguments bearing on the appropriate remedy, we remit to the Appellate Division for full briefing and consideration and for that Court to exercise its corrective action powers under CPL 470.20.

---

**9.** Nor could Suarez's claims that he was acting in self-defense or that he could not remember what happened when he stabbed his girlfriend support his conviction for depraved indifference murder. Depraved indifference murder entails depraved indifference, not a mere loss of memory or actions performed without conscious focus (*see also Gonzalez*, 1 NY3d at 469 ["In arguing that the jury might have concluded that defendant acted out of fear and anger, and therefore without intent, the People confuse recklessness with extreme emotional disturbance. A defendant who commits murder because of uncontrollable emotion may be entitled to raise an affirmative defense to murder, but the extreme emotional disturbance defense does not negate intent. The influence of an extreme emotional disturbance explains the defendant's intentional action, but does not make the action any less intentional. Indeed, when there is a finding that the defendant acted under extreme emotional disturbance, the offense is reduced from intentional murder in the second degree to intentional—not reckless—manslaughter in the first degree" (internal quotation marks and citations omitted)]).

Accordingly, in each case, the order of the Appellate Division affirming the judgment of conviction and sentence should be reversed and the case remitted to that Court for further proceedings in accordance with this opinion. Additionally, in *McPherson*, the order of the Appellate Division affirming the denial of defendant's CPL 440.10 motion should be affirmed.

G.B. SMITH, ROSENBLATT and R.S. SMITH, JJ. (concurring). We are full participants in the Court's per curiam decision, but write separately to add some views of our own.

The Court's earlier decisions in *People v Register* (60 NY2d 270 [1983]) and in *People v Sanchez* (98 NY2d 373 [2002]), which was based in significant part on *Register*, gave too expansive a definition to depraved indifference murder. The Court has properly limited the force of those decisions in *People v Hafeez* (100 NY2d 253 [2003]), *People v Gonzalez* (1 NY3d 464 [2004]) and *People v Payne* (3 NY3d 266 [2004]), and has limited them even further today. We would take a step beyond the per curiam opinion and say what the Court stops short of saying: that *Register* and *Sanchez* should be explicitly overruled.

Notwithstanding this difference, we welcome the Court's return to a more restrictive, and we believe more sound, interpretation of the depraved indifference murder statute. But there is, as all members of this Court are painfully aware, a price to be paid for this needed revision in the Court's approach. At least in *Gonzalez*, *Payne* and *Suarez*, defendants' convictions have been reversed despite—indeed, in part because of—strong evidence that they intended to kill their victims. But juries acquitted Gonzalez, Payne and Suarez of intentional murder, and we think the Court has rightly concluded that a correct interpretation of the depraved indifference murder statute does not permit their convictions of that crime to stand.

In overturning convictions in such cases, the Court, in our view, performs an unpleasant but necessary duty, and by doing so will make future homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to account for that crime. We expect, or at least hope, that the rule embodied in this and our other recent decisions will be applied prospectively, and that any impact on already completed prosecutions can be avoided. Defendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attrac-

tive candidates for collateral relief after their convictions have become final.[1]

A defendant who commits intentional murder should be convicted and punished for that crime, not for a crime that he or she did not commit and that a jury may mistakenly believe is less serious. Where intentional murder is not made out, the lesser degrees of homicide, including first and second degree manslaughter, can fully serve the function they served for decades before the relatively recent, seismic expansion in depraved indifference murder prosecutions.[2] Continuing to countenance the routine use of depraved indifference murder charges, as the dissent would have us do, will ultimately cause more trouble than the course the Court has taken today.

Further, and contrary to the dissent, the Court does not hold that a person who stabs another with a knife may *never* be guilty of depraved indifference murder. It is better to say "almost never," as the Court does. Though we have held that a point-blank shooting may almost never qualify as depraved indifference murder, we have recognized that a variation on Russian roulette (a point-blank shooting) may be an exception (*see People v Roe*, 74 NY2d 20 [1989]). Similarly, if one person kills another by throwing a knife to see how close it can get to the victim's head, a depraved indifference murder charge may be justified. But law school-type hypotheticals are not the stuff of the day-to-day criminal courts; and the per curiam opinion, by saying *"almost* never," avoids taking an absolutist position that would wholly foreclose depraved indifference murder, in a one-on-one situation, by the use of a knife or any other means.

We appreciate our dissenting colleague's desire to affirm in *Suarez* and reverse in *McPherson*. But, as the per curiam opinion demonstrates, to reach that result while applying *Register* and *Sanchez* requires overlooking the fact that both

---

1. Adherence to the *Register/Sanchez* analysis may have adverse consequences for the stability of previous convictions. Some federal court decisions indicate that the statute as interpreted according to *Register* and *Sanchez* raises constitutional problems that should result in the release of some defendants on federal collateral review (*see Jones v Keane*, 2002 US Dist LEXIS 27418 [SD NY, May 22, 2002, 02 Civ 1804 (CLB)], *revd on other grounds* 329 F3d 290 [2d Cir 2003]; *St. Helen v Senkowski*, 2003 US Dist LEXIS 26642 [SD NY, Sept. 19, 2003, 02 Civ 10248 (CLB)], *revd on other grounds* 374 F3d 181 [2d Cir 2004]; *see also Policano v Herbert*, 430 F3d 82 [2d Cir 2005]). Today's decision should alleviate those concerns.

2. This view was expressed in the dissenting opinions of G.B. Smith, Ciparick and Rosenblatt, JJ. in *Sanchez* (98 NY2d 373, 401-402, 416 [2002]).

defendants created at least a grave risk of death by fatally stabbing their victims in the chest. It may well be that justice would call for convicting Suarez of murder and McPherson of manslaughter, but the degree of risk created is not a sufficient basis for distinguishing between cases like these. The distinction can be properly made only by requiring that the prosecution, to obtain a murder conviction, must prove intent to kill or, in the rare cases where it is present, depraved indifference to human life. That is what the Legislature plainly intended, and we welcome the Court's decision today to adhere to that original intention.

READ, J. (concurring). On constraint of our decision in *People v Payne* (3 NY3d 266 [2004]), I concur with the result in *People v Suarez*. On constraint of our decisions in *People v Hafeez* (100 NY2d 253 [2003]) and *Payne*, I concur with the result in *People v McPherson*. For all the reasons expressed by Judge Graffeo, I find the majority's rationale for deviating from our longstanding precedent and reinterpreting Penal Law article 125 to be unconvincing. As Judge Graffeo further points out, our jurisprudence in this area now raises a significant public policy issue that only the Legislature can resolve.

GRAFFEO, J. (concurring in *McPherson* and dissenting in *Suarez*). The majority concludes that a person who stabs someone with a knife cannot act with "a depraved indifference to human life" (Penal Law § 125.25 [2]). To reach this conclusion and limit the applicability of the depraved indifference murder statute, the majority employs reasoning that is inconsistent with the language of the statute as well as the carefully drawn legislative distinctions between intentional murder, depraved indifference murder and manslaughter. Its rationale deviates from our precedent in *People v Sanchez* (98 NY2d 373 [2002]), *People v Register* (60 NY2d 270 [1983]) and other cases decided by this Court. Today's decision also fails to recognize and respect the ability of our jury system to reliably differentiate between different types of homicide. For these reasons, I respectfully disagree with the majority's interpretation of the depraved indifference murder statute.

## Depraved Indifference Murder

The Legislature codified distinct categories of homicide in the Penal Law that became effective in 1967. Murder in the second degree is committed by intentionally causing the death of an-

other (*see* Penal Law § 125.25 [1]). An intentional killing may also be classified as first-degree murder if certain aggravating circumstances concerning the crime, the victim or the defendant are present (*see* Penal Law § 125.27 [1] [a]). A murder is intentional when the accused acts with the "conscious objective" to kill (Penal Law § 15.05 [1]). A lesser offense, manslaughter in the first degree, is committed when a person who intended to cause serious physical injury, causes death (*see* Penal Law § 125.20 [1]).

Recognizing that not all criminal conduct is intentional, the Legislature created several categories of nonintentional homicide, reflecting differing degrees of criminal culpability. A distinct type of murder, referred to as "depraved mind murder," had previously been codified in New York, but the earlier statute had been interpreted to apply only to deaths that occurred when a defendant's conduct had endangered more than one person and was not directed at harming any particular person (*see Darry v People*, 10 NY 120, 147 [1854]). In order to expand the reach of the offense, the Legislature redesignated this category of homicide as "depraved indifference murder," classified it as second-degree murder and provided that the crime is committed when a person, "[u]nder circumstances evincing a depraved indifference to human life, [ ] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). To kill recklessly, as opposed to intentionally, one must be "aware of and consciously disregard[ ]" a risk that conduct will result in death (Penal Law § 15.05 [3]). Both of these forms of second-degree murder—intentional and depraved indifference—carry the same penalties and are class A-I felonies. This underscores the Legislature's desire to enact a category of homicide that, although not the result of a conscious intent to kill, is the result of circumstances, coupled with a grave disregard for life, comparable in severity and blameworthiness to intentional murder.[1]

Another category of homicide, manslaughter in the second degree, a crime of lesser grade and severity, is also premised on reckless conduct (*see* Penal Law § 125.15 [1]). There is, however, a critical difference between second-degree manslaughter and depraved indifference murder. Depraved indifference murder requires that the actor create a "grave" risk of death (Penal

---

1.  There are two other categories of nonintentional murder in the second degree, including felony murder (*see* Penal Law § 125.25 [3], [4]).

Law § 125.25 [2]), whereas the manslaughter statute employs a lesser, "substantial" risk of death standard (Penal Law § 15.05 [3]). When a jury concludes that the lesser degree of risk was created and convicts a defendant of manslaughter, a class C felony, the sentencing options are far less onerous than the penalties authorized for a depraved indifference murder conviction (*see generally* Penal Law art 70).

Thus, in delineating between these types of homicide, the Legislature clearly indicated that the important factors that distinguish these crimes are whether a person acts intentionally with respect to a particular result (for intentional murder and first-degree manslaughter) or recklessly with regard to whether death will result (for depraved indifference and second-degree manslaughter), and if the person was reckless, whether that conduct created a grave risk of death (for depraved indifference) as opposed to only a substantial risk of death (for manslaughter). The determination of the accused's state of mind and the degree of risk created by his or her conduct has traditionally and almost exclusively been reserved to a jury of the accused's peers.

This Court on a number of occasions has discussed the meaning of the depraved indifference requirement in the second-degree murder statute. In *People v Register*, we explained that depraved indifference "refers to neither the *mens rea* nor the *actus reus*" of the crime (60 NY2d at 276). Rather, it is "a definition of the factual setting in which the risk creating conduct must occur" (*id.*). This is consistent with the carefully chosen statutory condition that depraved indifference second-degree murder is available only in "*circumstances* evincing a depraved indifference to human life" (Penal Law § 125.25 [2] [emphasis added]). The Legislature inserted the word "circumstances" for a reason. As we emphasized in *People v Sanchez*, the "requirement of circumstances evincing a depraved indifference to human life . . . focuses not on the subjective intent of the defendant, 'but rather upon an objective assessment of the degree of risk presented by [the] defendant's reckless conduct' " (98 NY2d at 379-380, quoting *Register*, 60 NY2d at 277). And it is the "exceptionally high, unjustified risk of death [that] constitute[s] the primary means by which the Legislature differentiated between the reckless state of mind sufficient to establish the mental culpability of manslaughter and the extreme recklessness of [depraved indifference] murder" (*Sanchez*, 98 NY2d at 380).

From the viewpoint of statutory analysis, the majority's restrictive application of depraved indifference murder is inconsistent with the specific language of Penal Law § 125.25 (2) and our long established precedent construing that statute. According to the majority, the depraved indifference provision allows an individual to be prosecuted for second-degree murder if that person recklessly engages in conduct that creates a grave risk of death to another person and thereby causes the death of another person in the following situations: (1) where only one individual is put at risk of death and the accused "abandons [the] helpless and vulnerable victim in circumstances where the victim is highly likely to die" (majority op at 212) or "engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (majority op at 212) and (2) where more than one person is put at risk of death, regardless of the "helpless[ness]" and "vulnerab[ility]" of the victim (majority op at 212), or whether the defendant "engages in torture or a brutal, prolonged and ultimately fatal course of conduct" (majority op at 212).

This limited construction of the statute is unjustified. The language of Penal Law § 125.25 (2) does not remotely suggest that the extent of helplessness and vulnerability of the victim, or the length and nature of an attack, are prerequisites to a determination of depraved indifference. And the statute cannot plausibly be read to suggest that the Legislature intended the phrase "depraved indifference" to carry one definition in the context of a one-on-one altercation, yet mean something completely different when more than one person is endangered by the conduct of another. Furthermore, the legislative amendments to the second-degree murder statute in 1967 were meant to broaden the application of depraved indifference murder, not restrict it to cases like shooting into a crowd, opening a lion's cage or detonating a bomb in a public place, examples cited by the majority.

Aside from the problems inherent in the majority's inability to reconcile its interpretation with the plain language of the depraved indifference murder statute, today's decision signals a fundamental shift in our homicide jurisprudence. Although it purports to maintain the objective circumstances rule (*see* majority op at 214-215), the majority acknowledges that it is departing somewhat from the standard articulated in *Register* (*see* majority op at 215). Rather than focusing on the grave risk of death, the majority speaks in terms of the "wickedness, evil or

inhumanity" of the killer (majority op at 214). A majority of our Court clearly rejected this type of heightened mens rea just three years ago in *Sanchez*.

> "Nowhere in the[ ] modern formulations of depraved mind or depraved indifference murder is there a requirement that, in addition to the extremely reckless nature of the homicidal conduct, there must also be proof in some other sense of an 'uncommonly evil and morally perverse frame of mind' " (*Sanchez*, 98 NY2d at 383).

We also noted that to adopt the position now taken by the majority—to add "further mens rea elements or substantive requirements of subjectively defined characteristics of the defendant's acts" (*id.* at 384)—"will only confuse rather than clarify" the distinction between intentional and depraved indifference murder (*id.*). And in the two cases that followed *Sanchez*, *People v Hafeez* (100 NY2d 253 [2003]) and *People v Gonzalez* (1 NY3d 464 [2004]), we continued to apply the objective circumstances rule to determine whether there was legally sufficient evidence of depraved indifference murder, and concluded that the planned, premeditated nature of those two killings was consistent only with an intent to kill, not a reckless state of mind.

In this Court's most recent depraved indifference decision, *People v Payne* (3 NY3d 266 [2004]), a majority held that the point-blank shooting of a person in the chest with a shotgun should not be classified as depraved indifference murder because "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder" (*id.* at 272), regardless of other objective circumstances that may be present in a particular case, since murders of this nature demonstrate an inherent "manifest intent to kill" that does not constitute an indifference to human life (*id.* at 271). In my view, both *Payne* and the rule enunciated by the majority here conflict with our statement in *Sanchez* that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life" (98 NY2d at 384). Put another way, we recognized in *Sanchez* that there can be an act that creates "such a high risk of death that it could also lead to the conclusion that it was intentional[, which] supports rather than detracts from characterizing it as evincing depraved indifference to human

life" (*id.*).[2] In fact, in *Sanchez*, where the defendant unjustifiably shot another person at close range in the chest, we affirmed the depraved indifference murder conviction precisely because "the likelihood of causing death . . . was so obviously severe that it evinced a depraved indifference to human life" (*id.*).[3]

The majority attempts to reconcile its decision with the principles articulated in *Sanchez* by stating that the depraved indifference murder conviction in that case was upheld only "because 'others were endangered' " (majority op at 213 n 7, quoting *People v Payne*, 3 NY3d at 272). But the *Sanchez* opinion neither relied on danger to multiple individuals as a decisive factor supporting a finding of depraved indifference, nor suggested that such a fact was crucial to its reasoning. To perpetuate this thin distinction further confuses the state of the law in New York.

I expect that the impact of the majority's decision will not be limited to undermining the principles espoused in *Register* and *Sanchez*. For example, in *People v Roe* (74 NY2d 20 [1989]) we concluded that the death of the victim, who was shot during a game of "Polish roulette," was properly classified as depraved indifference murder. Roe had loaded a shotgun with a combination of live and dummy shells, aimed it at the victim and pulled the trigger not knowing which type of round had been chambered. In that one-on-one, close-range shooting, the defendant neither "abandon[ed] a helpless and vulnerable victim" (majority op at 212) nor engaged in a "prolonged and ultimately fatal course of conduct" (majority op at 212), yet we nevertheless upheld the conviction for depraved indifference murder. Although the majority indicates that *Roe* was properly convicted of depraved indifference murder because it was "extraordinary" (majority op at 213), the majority does not explain how or why that is so in light of the new limitations imposed on depraved indifference murder.

---

**2.** We also observed that the commentary to the Model Penal Code, which influenced our depraved indifference murder statute, was consistent with this view (*see Sanchez*, 98 NY2d at 384; Model Penal Code and Commentaries, part II, § 210.2, Comment 4, at 21-22 [1980]).

**3.** Additionally, the rule announced by the majority in this case and *Payne* essentially creates a mandatory legal presumption that a person intends the ordinary consequences of his or her voluntary acts, which "reliev[es] the State of the burden of proof enunciated in *Winship* on the critical question of [the defendant's] state of mind" (*Sandstrom v Montana*, 442 US 510, 521 [1979]; *see In re Winship*, 397 US 358 [1970]).

There are other troubling ramifications of this ruling that will not be limited to the second-degree murder statute. The crimes of assault in the first degree and reckless endangerment in the first degree also require that the defendant, "[u]nder circumstances evincing a depraved indifference to human life, [ ] recklessly engage[ ] in conduct which creates a grave risk of death to another person" (Penal Law § 120.10 [3]; *see* Penal Law § 120.25). Presumably, the majority's new interpretation of "depraved indifference" in the context of second-degree murder will apply with equal force to these two offenses since identically worded phrases in the same chapter of laws are usually accorded the same meaning. In light of this assumption, substantial case law from this Court will have dubious precedential value, including cases where we concluded that the requirement of "depraved indifference" is satisfied when a single gunshot was fired at point-blank range into the victim's temple (*see People v Tuck*, 87 NY2d 828 [1995]), a loaded and cocked handgun was placed against the temple but was not fired (*see People v Chrysler*, 85 NY2d 413 [1995]) and the victim was beaten and had a metal object plunged into his spinal cord (*see People v Lynch*, 95 NY2d 243 [2000]). Despite the fact that these circumstances do not fit into either of the two categories of "one-on-one" depraved indifference that the majority identifies (the defendants neither "abandon[ed] a helpless and vulnerable victim in circumstances where the victim is highly likely to die" [majority op at 212] nor "engage[d] in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" [majority op at 212]) before today it was generally accepted that juries could consider the circumstances surrounding such conduct in evaluating the requirements of depraved indifference.[4]

The majority's primary justification for altering our approach to depraved indifference murder centers on a concern that prosecutors and juries have been conflating this crime with intentional murder in the second degree. Contrary to the majority's belief, recognition of the long-standing rule of law expressed in *Sanchez* and *Register* does not convert " 'every homicide, particularly intentional ones . . . into depraved indiffer-

---

4. *See* Model Penal Code and Commentaries, part II, § 210.2, Comment 4, at 22 (1980) ("[i]t must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder and that less extreme recklessness should be punished as manslaughter").

ence murder' " (majority op at 209, quoting *People v Payne*, 3 NY3d at 270). There is a readily understandable distinction between intentional and depraved indifference murders—the killer's state of mind. As we have recognized, a person can act intentionally by having the conscious objective to cause death, or recklessly by disregarding a known risk of death, but cannot act with both mental states simultaneously with regard to the same result (*see People v Trappier*, 87 NY2d 55, 58-59 [1995]; *People v Gallagher*, 69 NY2d 525, 529 [1987]). Thus, simultaneous convictions for both intentional murder and depraved indifference murder cannot stand. But it does not follow that both counts may not be submitted to a jury in the alternative, with the jury to decide which offense, if any, occurred. Since direct evidence of the inner workings of a person's mind is often unavailable, the determination of the actual mens rea of a killer has traditionally remained in most situations a question of fact for the jury based on all the evidence and the entire circumstances (*see People v Smith*, 79 NY2d 309, 315 [1992]). The majority effectively takes that decision away from the jury, requiring a judge to preemptively choose between these alternative states of mind, even where it is the defendant who raises a factual dispute concerning mens rea by asserting that he or she did not intend to kill.

Intentional and depraved indifference murder are also distinguishable because once the jury determines that a homicide was committed purposefully, "the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant" (*People v Gonzalez*, 1 NY3d at 468). This is so because an intentional killing is, by its very nature, " ' "wanton . . . deficient in [ ] moral sense . . . [and] devoid of regard of the life or lives of others" ' " (*People v Russell*, 91 NY2d 280, 287 [1998], quoting *People v Fenner*, 61 NY2d 971, 973 [1984]). It is only when a jury determines that a defendant did not consciously intend to cause death, but acted recklessly, that the jury must further decide whether the objective circumstances of the crime evince a depraved indifference to human life that "equals in blameworthiness intentional conduct purposefully designed to cause death" (CJI 2d [NY] Penal Law § 125.25 [2] ["Depraved Indifference Murder and Reckless Manslaughter Explained"] [revised Aug. 2, 2004]). The purpose of this inquiry is not to differentiate between intentional and depraved indifference murder but to decide whether the defendant created such a grave, "exceptionally high" risk of death that murder, as opposed to

manslaughter, has been committed (*People v Sanchez*, 98 NY2d at 380; *see People v Register*, 60 NY2d at 279).

Certainly depraved indifference murder should not be used as a "fallback crime" by prosecutors or juries (majority op at 214). As the distinctions between the intentional murder and depraved indifference murder provisions clearly indicate, this was not the intent of the Legislature and, therefore, is not what courts should charge juries as the law of this State. Rather, depraved indifference murder is a viable, morally equivalent crime, equal in both classification and severity of punishment to intentional murder, yet sufficiently distinguishable both legally and factually. It should be charged and considered by the jury when the facts, as viewed in the light most favorable to the People, could permit a rational jury to conclude that a defendant acted recklessly with a depraved indifference to life.

To presume that conflation is widespread, one must necessarily believe that juries are incapable of distinguishing between intentional and reckless states of mind, and are similarly unable to determine whether the circumstances of the defendant's actions created a grave, transcendent risk of death justifying a conviction of second-degree murder or a substantial risk of death warranting a manslaughter conviction. I have faith in the jury system—jurors are perfectly capable of making these determinations and it is therefore unnecessary for this Court to create artificial categories of depraved indifference murder that are not supported by the language of Penal Law § 125.25 (2). The majority recognizes that "[o]ftentimes it will not be easy to determine whether a defendant's conscious objective was to kill or merely to injure" but, nonetheless, "those are the hard choices to be weighed by the trier of fact" (majority op at 214). The majority then inexplicably fails to appreciate that the same is true with respect to distinguishing between an intentional and reckless state of mind—a determination that, although sometimes difficult, nevertheless traditionally has been and should remain the responsibility of a jury (*see People v Sanchez*, 98 NY2d at 384-385).

Ultimately, the majority's reasoning will not likely clarify this issue for courts and prosecutors, who continue to struggle to determine what this Court's view on depraved indifference will be on the facts presented in a particular homicide case. Although the majority has left open the possibility that additional categories of one-on-one homicides, other than the two explicitly identified in today's decision, may qualify for treatment as

depraved indifference murder if the circumstances are "extraordinary" (a term it does not define), trial courts and prosecutors are well advised to tread carefully when dealing with depraved indifference murder in the future, lest further injustices occur.

One thing is certain. We no longer have a category of reckless homicide that is comparable in grade and penalty to intentional murder, except in the rare situations authorized by the majority. There is an urgent need for the Legislature to reexamine article 125 of the Penal Law in the aftermath of today's decision. Undoubtedly, there will be future killings that juries may decide were not committed with an intent to kill, but were the result of reckless acts committed with a grave disregard for life. The policy issue is whether this type of criminal conduct should expose these offenders to criminal penalties more severe than those available for a class C felony conviction of manslaughter in the second degree. The Legislature should explore what societal objectives need to be preserved in article 125 and restructure New York's homicide statutes to meet those objectives.

## The Cases Before Us

Based on the facts presented in these two cases, and applying our established principles of depraved indifference murder as articulated in *Register* and *Sanchez*, I conclude that there was legally sufficient evidence to support the second-degree murder conviction of defendant Santos Suarez. Viewed in the light most favorable to the People, the jury could have rationally determined that Suarez did not consciously intend to kill the victim when he became embroiled in a dispute with her, but rather acted recklessly by disregarding the grave risk that his conduct would result in the death of the victim. Suarez testified that he did not intend to kill the victim. Surely jurors are allowed to credit this testimony. Suarez also alleged that it was his girlfriend who produced the knife during their verbal confrontation. If found to be a credible claim by the jury, this was an indication that the attack by defendant was not premeditated (*cf. People v Gonzalez*, 1 NY3d 464 [2004] [after seeing the victim, the defendant departed and later returned with the murder weapon]; *People v Hafeez*, 100 NY2d 253 [2003] [retaliatory attack was plotted in advance]). There was also ample evidence that defendant's actions created such an exceptionally high, grave risk of death that they were properly classified as depraved indifference murder rather than manslaughter. The

victim received three stab wounds in her torso, two of which perforated a major vein and caused half of the blood in the victim's body to pour into her chest cavity. Under these circumstances, the jury's determination that Suarez was guilty of depraved indifference murder was rational as it was supported by record evidence.

As for defendant Trisha McPherson, I concur with the majority that the evidence was insufficient to justify a depraved indifference murder conviction. Unlike in *Suarez*, McPherson was not charged with both depraved indifference murder and intentional murder and the People did not assert at trial that she possessed an intent to kill. The only issue was whether there were objective circumstances evincing a depraved indifference to human life. The proof, even viewed in the People's favor, was that McPherson carried the knife to the scene and during an escalating argument with the victim, inflicted a single stab wound. McPherson then immediately called 911 for help and remained with the victim until she heard sirens indicating that assistance was on the way before departing, demonstrating her efforts to minimize the possibility that the wound she inflicted would prove to be fatal.

Accordingly, in *People v Suarez*, I would affirm defendant's conviction; in *People v McPherson*, I would modify by dismissing the depraved indifference murder conviction. In light of the majority's decision to remit *McPherson* for consideration of the proper remedy, it is unnecessary for me to address the proper corrective action that should be taken and I therefore express no view on the propriety of remittal.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and R.S. SMITH concur in per curiam opinion; Judges G.B. SMITH, ROSENBLATT and R.S. SMITH concur in a separate concurring opinion; Judge READ concurs in result in a separate opinion; Judge GRAFFEO dissents and votes to affirm in another opinion.

In *People v Suarez:* Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and R.S. SMITH concur in per curiam opinion; Judges G.B. SMITH, ROSENBLATT and R.S. SMITH concur in a separate concurring opinion; Judge GRAFFEO concurs in result in a separate opinion; Judge READ concurs in result in another opinion.

In *People v McPherson:* On defendant's appeal from the order of the Appellate Division affirming the judgment of conviction and sentence as to murder in the second degree, order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein. On defendant's appeal from the order of the Appellate Division affirming the order of Supreme Court denying defendant's CPL 440.10 motion, order affirmed.