*902 OPINION OF THE COURT
Randall T. Eng, J.
As the result of an argument which occurred outside of a Queens bar that rapidly escalated into a violent confrontation between the defendant and the deceased, Diogenes Fermín, and a friend of Mr. Fermin’s named Jerry, the victim was killed during the early morning hours of May 20, 2006. The defendant was arrested and was charged in a felony complaint, dated May 21, 2006, with the offenses of murder in the second degree (Penal Law § 125.25 [1]), murder in the second degree (Penal Law § 125.25 [2]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]). On July 21, 2006, the matter was presented to a Queens County grand jury, with the presentation of evidence concluding on July 25, 2006. The evidence consisted of testimony from two eyewitnesses, two police officers, an assistant district attorney who was present when the defendant made a videotaped statement, an emergency medical technician, and a forensic pathologist from the Office of the Chief Medical Examiner; in addition, documentary evidence in the form of Mr. Fermin’s medical records from Jamaica Hospital and the certificate of death prepared by the medical examiner were also presented to the grand jury.
Despite the recent case law from the Court of Appeals with respect to the rarity of “win-count” indictments (see, People v Suarez, 6 NY3d 202, 215 [2005]), the People elected to submit both intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal Law § 125.25 [2]) to the grand jury, together with the additional offense of manslaughter in the first degree (Penal Law § 125.20 [1]). After considering the evidence in conjunction with the People’s legal instructions, which included a charge with respect to the defense of justification (Penal Law § 35.15), the grand jury on July 25, 2006 voted to indict the defendant only for the crimes of murder in the second degree (depraved indifference murder) and manslaughter in the first degree. The charge of murder in the second degree (intentional murder) was dismissed (CPL 190.60, 190.75).
The testimony of the two eyewitnesses regarding the sequence of events that led to the death of Mr. Fermín was, with one legally insignificant exception, remarkably in accord with the version expressed by the defendant in his videotaped statement. In sum and substance, sometime after 2:00 a.m. on May 20, 2006, the defendant became embroiled in a verbal and heated argument outside of an establishment known as The Ranch Bar. *903 A friend of the victim by the name of Jerry then entered the fray armed with a bat and, according to the defendant, struck him on the side of the head with that object. At that point, the confrontation had developed into a physical struggle culminating with the defendant punching the deceased in the jaw. The brute force of the blow caused Mr. Fermín to fall forward onto the sidewalk, where he landed upon his face next to a roll-up gate at the front of the bar. The defendant then left the scene of the altercation, only to quickly return brandishing a weapon which he described as a pipe; in contrast, both of the eyewitnesses characterized the weapon as a knife, declaring that the blade was approximately a foot in length. While Mr. Fermín remained silent and unmoving on the sidewalk, the defendant and Jerry began to joust with one another in the manner of a “sword-fight,” Jerry armed with the bat, the defendant countering with either a pipe or a knife. Suddenly, the defendant ran over to where the victim lay on the sidewalk, and twice stabbed him with either the knife or pipe and then viciously twice “stomped” down upon the victim’s head and neck with one of the boots that he was wearing. The defendant would later admit that it was easier to “do him dirty, than the kid with the bat.”
The forensic pathologist who performed the autopsy of Mr. Fermín testified as to the external and internal injuries received by the 24-year-old victim. In addition to multiple contusions and abrasions about his body, an antemortem fracture of his mandible (jawbone), and internal hemorrhaging within the neck area and his lungs, the victim had suffered a fatal disarticulation of the cervical spine. The pathologist explained that the disarticulation of the victim’s cervical spine impacted upon the upper part of the victim’s spinal cord which, in turn, comes out of the medulla, the area of the brain which controls breathing. The pathologist further testified that the victim’s injuries were consistent with having been punched in the face and then having been stomped upon two times, while he was lying with his head turned and his cheek on the ground.
By omnibus motion, the defendant has moved for an inspection of the grand jury minutes and dismissal of the indictment upon the grounds that the evidence before the grand jury was not legally sufficient to establish the offenses charged or any lesser included offenses, pursuant to CPL 210.20 (1) (b); 210.30 and 210.45. The People have submitted an affirmation in opposition.
In reviewing the legal sufficiency of an indictment the court must view the evidence in the light most favorable to the People *904 and determine whether that evidence, if unexplained and uncontradicted, would be sufficient to support a guilty verdict after trial (see, People v Jensen, 86 NY2d 248, 251 [1995]; People v Jennings, 69 NY2d 103, 114 [1986]; People v Smaragdas, 27 AD3d 769 [2006], lv denied 7 NY3d 763 [2006]). The court’s inquiry is limited to assessing whether the facts, if proven, and the logical inferences flowing therefrom, supply proof of each element of the charged crimes (see, People v Bello, 92 NY2d 523, 526 [1998]). The existence of innocent inferences arising from the evidence has no bearing upon the legal sufficiency inquiry (see, People v Deegan, 69 NY2d 976).
Having carefully reviewed, in a light most favorable to the People, all of the evidence adduced before the grand jury, the court is of the opinion that the evidence was legally insufficient to supply proof of the elements of the crime of depraved indifference murder (Penal Law § 125.25 [2]). The court’s inquiry has been guided by the most recent pronouncements in this area by the Court of Appeals (see, People v Payne, 3 NY3d 266 [2004]; People v Suarez, 6 NY3d 202 [2005], supra; People v Feingold, 7 NY3d 288 [2006]).
Citing its own holdings in People v Gonzalez (1 NY3d 464 [2004]), People v Hafeez (100 NY2d 253 [2003]) and People v Sanchez (98 NY2d 373 [2002]), the Court of Appeals in Payne (supra at 270) reaffirmed the rule that “depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York.” In Suarez (supra at 207), the Court of Appeals noted that “[t]he proliferation of the use of depraved indifference murder as a fallback theory under which to charge intentional killers reflects a fundamental misunderstanding of the depraved indifference murder statute.” Continuing, the Court of Appeals stated “because the statute requires ‘circumstances evincing a depraved indifference to human life’ (Penal Law § 125.25 [2]), depraved indifference murder applies only to a small, and finite, category of cases where the conduct is at least as morally reprehensible as intentional murder” (People v Suarez, supra at 207).
In order to provide unequivocal guidance to the courts of this state, the Court of Appeals, in Suarez (supra), plainly stated that “[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances” (Suarez, supra at 212). The Court of Appeals then proceeded to define those circumstances:
*905 “First, when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die, the defendant’s utter callousness to the victim’s mortal plight — arising from a situation created by the defendant — properly establishes depraved indifference murder [citing People v Kibbe (35 NY2d 407 [1974]), where the defendants] robbed an intoxicated victim and forced him out of a car on the side of a dark, remote, snowy road, partially dressed and without shoes in subfreezing temperatures, where he was struck by a passing truck, and killed, [and People v Mills (1 NY3d 269 [2003]), where] the defendant, without intent to harm or kill his victim, pushed a young boy into the water, watched him submerge without resurfacing (either because the boy had accidentally struck his head or because of an epileptic seizure), falsely informed his friends in response to their cries to help the victim that he was in fact swimming away, and abandoned the drowning boy to die” (People v Suarez, supra at 212).
In the case before this court, there is, in fact, overwhelming evidence of the defendant’s “intent” to seriously injure, if not to kill, Mr. Fermín. The mere fact that the defendant fled after the attack and did not summon aid for the victim does not transform the killing into a depraved indifference murder. “Otherwise, homicides would be routinely and improperly converted into depraved indifference murders whenever — as is often the case — the killer leaves the scene” (People v Suarez, supra at 210).
The second circumstance under which a defendant may be convicted of depraved indifference murder when but a single person is endangered is established
“when a defendant — acting with a conscious objective not to kill but to harm — engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim [citing People v Poplis (30 NY2d 85 [1972]), where] the defendant committed depraved indifference murder when, albeit without any intent to kill, he caused the death of a 31/2-year-old infant as a result of continually beating the child over a period of five days” (People v Suarez, supra at 212-213).
Here, while it could be argued that Mr. Fermín was “vulnerable” as he lay face down upon the sidewalk prior to being *906 stomped, the swift kicking actions of the defendant, though deadly, were neither torturous nor prolonged.
The third and final circumstance under which the Court of Appeals would sustain a conviction for depraved indifference murder involving a one-on-one confrontation would be in an “extraordinary case[ ] . . . where the evidence showed not just recklessness, but depraved indifference to human life [citing People v Roe (74 NY2d 20 [1989]), where the] defendant fired at point-blank range without knowing whether the bullet was a ‘live’ or ‘dummy’ round” (People v Suarez, supra at 213).
Under that definition, the defendant’s acts of stabbing the victim and later stomping him twice on the head did not, as a matter of law, constitute depraved indifference murder. That the grand jury saw fit not to indict the defendant for intentional murder is not a factor justifying the retention of the single count of depraved indifference murder.
Furthermore, as clearly articulated in People v Feingold (supra at 293), depraved indifference is a culpable mental state which requires “a depraved kind of wantonness.” In the view of this court, depraved indifference murder requires proof of recklessness as defined in Penal Law § 15.05 (3), plus indicia of proscribed wantonness. The evidence presented in the case at bar is clearly deficient in this respect.
Accordingly, that branch of the defendant’s motion to dismiss the indictment is granted as to count one — murder in the second degree; it is denied as to count two — manslaughter in the first degree.