**UNITED STATES of America,**

v.

**Ashok Kumar MALIK and Vinod Krishan Gupta, Defendants.**

**No. 86 CR. 629 (EW).**

United States District Court,
S.D. New York.

Aug. 29, 1986.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for U.S.; Linda C. Severin, Asst. U.S. Atty., of counsel.

Buchwald & Kaufman, New York City, for defendant Malik; Don D. Buchwald, of counsel.

Edward Panzer, New York City, for defendant Gupta.

## OPINION

EDWARD WEINFELD, District Judge.

Ashok Kumar Malik and Vinod Krishan Gupta are named as co-defendants in a four count indictment. Both defendants are charged in Count One with conspiracy to distribute and to possess with intent to distribute over one hundred grams of heroin in violation of Title 21, United States Code, Section 846. Counts Two and Three contain separate charges against Gupta of attempting to distribute and possession with intent to distribute two and three kilograms of heroin. Count Four charges defendant Malik with possessing with intent to distribute approximately eight kilograms of heroin, in violation of Title 21, United States Code, Section 841.

The defendant, Malik, moves to suppress all statements made by him and all items seized in a hotel room occupied by him on the ground that they were the fruits of an alleged illegal, warrantless arrest which was not justified by exigent circumstances. After an evidentiary hearing, the court makes the following findings of fact. On July 11, 1986, in room 2131 of the Hotel Milford, New York City, James D. Craig, a special agent of the Drug Enforcement Administration, had negotiated the purchase from Vinod Gupta of two kilograms of heroin. Craig, on the pretense that he was to get the money to pay for the purchase, left the hotel room and soon returned with other agents and placed Gupta under arrest. Gupta was advised of his constitutional rights and consented to a search of

his room where additional heroin was found.

After Gupta's arrest, the telephone in his room rang and a confidential informant, who had played a role in introducing Craig to Gupta, answered. The caller identified himself as "Ashok" and asked to speak with Gupta. The confidential informant, under instructions from Agent Craig, told the caller that Gupta was downstairs with the agent counting money. The caller left a message that he would call Gupta back later. Gupta, when questioned as to the identity of Ashok, said he was Ashok Malik; that he knew Malik from India and that he had come "here" approximately three days before in connection with heroin trafficking activities. Gupta also informed the agents that Malik was staying in room 2709 at the Milford Plaza, where on the previous night he had seen over one hundred grams of heroin, and that he believed there was additional heroin in Malik's hotel room. After verifying with hotel officials that Ashok Malik occupied room 2709, two agents conducted surveillance from an adjacent room, and at approximately 2:10 p.m. they observed a man fitting Malik's description enter room 2709 with a key.

Agent Craig testified that in light of his transaction with Gupta, the latter's incriminating statements about Malik, Malik's telephoning to Gupta's hotel room during the period that the undercover transaction was to have occurred, and a prior statement by Gupta to the confidential informant that he had received the confidential informant's telephone number from "Ashok," he, that is, Craig, believed Malik was a participant in a narcotics conspiracy and that Malik had a large quantity of heroin in his hotel room.

Agent Craig further testified that he believed it was likely that Malik had called Gupta's room in order to check on the status of the heroin transaction which the agent had negotiated with Gupta. He also testified that he believed Malik would soon be calling Gupta again, and that after he was seen entering his room at 2:10 p.m. Craig became especially concerned that Ma-lik was about to make the call and feared if he was unable to reach Gupta he would become suspicious that something was amiss, would suspect that Gupta had been arrested, and would attempt to escape or destroy the heroin which Gupta said Malik had in his room. After telephonic consultation with an Assistant United States Attorney it was decided to enter and secure room 2709 pending the issuance of a search warrant.

At approximately 2:20 p.m. Craig and other agents took Gupta to room 2709, had him knock on the door, and when Malik opened the door the agents identified themselves and Craig informed Malik he was suspected of being involved in heroin trafficking. Malik was advised of his Miranda rights by Agent Craig, and, in response to Craig's questions, admitted that he had come here to deliver heroin and indicated that he had been waiting for Gupta to tell him where to take the heroin. After he made those statements he was arrested. He was then taken to an adjacent room for a brief period so that if other alleged co-conspirators appeared they might be apprehended. During the short interval they were in the adjacent room, all persons were out of room 2709 and no search was made of it. However, after no more than two minutes Craig returned with Malik and the other agents to room 2709. Craig then preceded to the United States Attorney's office where a detailed affidavit was sworn to by him in support of an application for a search warrant. The warrant was granted by a Magistrate at 5:50 p.m. and was forth-with executed. In the interval, other agents remained with Malik in his room pending the issuance of the warrant and no search was made during that time.

The record abundantly establishes that there was probable cause to believe that an ongoing conspiracy, of which Malik was a member, to violate the narcotic laws was in operation. Indeed, counsel for the defendant does not dispute this, but contends that Malik could have been arrested before he entered his room, and that the agents should not have entered his room without

first securing the search warrant. The issue on this motion is whether exigent circumstances existed which authorized the officers to enter and secure Malik's hotel room and arrest Malik without a warrant pending an application for a search warrant.[1]

▮ There indeed were exigent circumstances which justified the officers entering the hotel room without a search warrant. The offense was one of severe gravity. The arresting officers had information to indicate that a large amount of narcotics were in the room. There was great likelihood that once Malik called Gupta's room a second time without a response, having previously been apprised that Gupta had gone down to collect the money on the illegal transaction with Officer Craig, he would have suspected something had gone wrong and either attempted to flee with or to destroy the heroin he had in the hotel room.[2]

▮ The agents are criticized for not having obtained a so called "telephonic" search warrant based upon the same information contained in a detailed affidavit upon which the warrant was granted and executed by 6 p.m. Approximately twenty to thirty-five minutes passed between the time the agents learned from Gupta of Malik's involvement with heroin and when they entered the hotel room. The agents were clearly faced with an emergency situation involving vast quantities of heroin and a co-conspirator who might call his associate back at any time. Much of the twenty to thirty-five minutes were necessarily spent determining if Malik was in his room, as well as discussing the overall situation with the United States Attorney's office. Given the time frame, the strength of the probable cause, and the exigent cir-

cumstances which existed, the agents did not act unreasonably by neither applying for an arrest warrant nor a search warrant before entering to secure the defendant's hotel room. Nor was it unreasonable for them to wait until Malik entered his room before confronting him. Until Malik had entered the room the agents could not be certain of his identity, and, in addition, they did not know if he was armed so that a confrontation in the public hall might endanger hotel employees and guests. The court takes judicial notice of the fact that magistrates are under a heavy work burden. They are regularly engaged in their respective court rooms, either conducting hearings, entertaining applications, or otherwise engaged in previously scheduled judicial activities, and telephonic applications would mean interruption of these ongoing proceedings. Such applications should be the exception rather than the rule. Requiring government law enforcement officials to apply for a telephonic warrant in a situation such as this, even if it were feasible, would not be practical. The motion to suppress the evidence seized pursuant to the search warrant is denied.

The defendant also moves that incriminating statements made by him in response to certain questions, while he was in the hotel room, be suppressed on the grounds that they were made either before the defendant had been advised of his constitutional rights[3] or after he had requested to speak to an attorney.[4]

▮ The record contains some conflicting testimony as to the point at which the alleged incriminatory statements were made by Malik. Craig was one of the two agents in charge of the case and, in the main, directed the activities of the other agents. He gave Malik the Miranda warn-

1. *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

2. *Cf. United States v. Farra,* 725 F.2d 197 (2d Cir.1984); *United States v. Martinez-Gonzalez,* 686 F.2d 93, 100 (2d Cir.1982); *United States v. Reed,* 572 F.2d 412, 424 (2d Cir.), *cert. denied,*

439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978).

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

ing and requested his consent to the search of his room. Based on my observations of Craig and the other agents in their demeanor in testifying, I accept Craig's testimony as to the sequence of events. It was evident that Craig was a careful agent and fully mindful of the defendant's rights and the need to conform to the Miranda requirements. Craig advised Malik of his constitutional rights before questioning him, and Malik stated that he understood those rights. The defendant then voluntarily made the incriminating statements to the effect that he had come "here" in order to deliver heroin, and that he had been waiting for Gupta to tell him where to take the heroin. Craig then placed Malik under arrest and asked him for consent to search his room. Malik refused to give his consent and stated that he wanted to speak with an attorney. All questioning by the agents then ceased except that one agent, during the course of the search conducted pursuant to the warrant, asked Malik where the heroin was located. With this one exception, all other statements were made voluntarily, after being advised of his constitutional rights which he fully understood, and before he had asked to speak with an attorney. Accordingly, the defendant's motion to suppress his incriminating statements made in the hotel room is denied except with respect to his response to the inquiry concerning where the heroin was located.

Finally, the defendant moves to suppress the statement, "We're guilty but we are not professional," made by him while he was being transported to the Metropolitan Correctional Center. The uncontradicted testimony of the transporting agents is that this statement was spontaneous and volunteered by the defendant after Agent Craig, in hearing Malik and Gupta conversing in a foreign tongue which the agents did not understand, jokingly said to the other agent with him, "Ah, they're getting

their story straight." The circumstances under which this statement was made do not give rise to a violation of the defendant's constitutional rights. There is no rational basis on which it can be urged that Craig's statement to his fellow officer was remotely likely to elicit Malik's spontaneous, volunteered incriminatory response.[5]

The motion to suppress any of the above discussed evidence seized or incriminating statements made by the defendant is denied, with the exception of his answer as to where the heroin was located.

So ordered.

---

5. *Cf. Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (there was no express questioning of the defendant where the conversation between the two officers was, at least in form, nothing more than a dialogue between them to which no response was invited and it cannot be said that the officers should have known that their conversation was reasonably likely to elicit an incriminating response).