[970 NE2d 404, 947 NYS2d 381]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MONROE B. BUSSEY, Appellant.

Argued March 21, 2012; decided May 3, 2012

232

**POINTS OF COUNSEL**

*Alex Smith*, Middletown, for appellant. I. The submission of the twin counts of intentional murder and depraved indifference murder to the jury violated appellant's rights to a fair trial and due process of law. (*People v Baptiste*, 51 AD3d 184; *People v Suarez*, 6 NY3d 202; *People v Taylor*, 15 NY3d 518; *People v Little*, 83 AD3d 1389; *People v Feingold*, 7 NY3d 288; *People v Payne*, 3 NY3d 266; *People v Rollins*, 51 AD3d 1279; *Fernandez v Smith*, 558 F Supp 2d 480; *People v Timmons*, 78 AD3d 1241; *People v Joseph*, 68 AD3d 1534.) II. The depraved indifference murder, felony murder, tampering and marijuana verdicts were based upon legally insufficient evidence, were not proved beyond a reasonable doubt, and the kidnapping conviction and

predicate should have merged. (*People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Reed*, 40 NY2d 204; *People v Carter*, 63 NY2d 530; *People v Suarez*, 6 NY3d 202; *People v Mancini*, 7 NY3d 767; *People v Campbell*, 33 AD3d 716; *People v Kibbe*, 35 NY2d 407; *People v Mills*, 1 NY3d 269; *People v Waldron*, 17 Misc 3d 509.) III. The prosecutor's repeated use of statements made by severed codefendants was impermissible hearsay and violated appellant's rights to confrontation and due process under the United States and New York State Constitutions. (*People v Roman*, 212 AD2d 390; *Crawford v Washington*, 541 US 36; *Davis v Washington*, 547 US 813.) IV. Prosecutorial misconduct in the summation deprived appellant of his rights to a fair trial and due process under the Federal and State Constitutions.

*Francis D. Phillips, II, District Attorney*, Middletown (*Andrew R. Kass* and *Lauren E. Grasso* of counsel), for respondent. I. Defendant's convictions are supported by legally sufficient evidence. (*People v Sanchez*, 98 NY2d 373; *People v Russell*, 34 AD3d 850, 8 NY3d 884; *People v Pomie*, 55 AD3d 630, 11 NY3d 899; *People v Georgiou*, 38 AD3d 155, 9 NY3d 844; *People v Contes*, 60 NY2d 620; *People v Taylor*, 94 NY2d 910; *People v Norman*, 85 NY2d 609; *People v Rhodes*, 49 AD3d 668; *People v Romero*, 7 NY3d 633; *People v Joseph*, 68 AD3d 1534.) II. Defendant's due process challenge premised on the submission of the twin intentional and depraved indifference murder counts is unpreserved for appeal and, in any event, is without merit. (*People v Suarez*, 6 NY3d 202; *People v Gray*, 86 NY2d 10; *People v Danielson*, 40 AD3d 174; *People v Carter*, 40 AD3d 1310; *Jones v Keane*, 329 F3d 290, 540 US 1046; *DiSimone v Phillips*; 461 F3d 181; *People v Gutierrez*, 15 AD3d 502; *People v Johnson*, 67 AD3d 448; *People v Page*, 63 AD3d 506; *Green v Abrams*, 984 F2d 41.) III. Defendant's claims that the trial court erroneously denied his request to charge that Stanford Boyd and Crystal French were accomplices as a matter of law are without merit. (*Caminetti v United States*, 242 US 470; *United States v Florez*, 447 F3d 145; *United States v Zapata*, 205 F3d 1327; *United States v Riggi*, 541 F3d 94; *Smithwick v Walker*, 758 F Supp 178; *People v Jones*, 73 NY2d 902; *People v Vataj*, 69 NY2d 985; *People v Besser*, 96 NY2d 136; *People v Tucker*, 72 NY2d 849; *People v Basch*, 36 NY2d 154.) IV. Defendant's claim that the prosecution's use of statements made by codefendants during his cross-examination violated the rules against hearsay as well as his right to confrontation is, to a certain extent, unreviewable, and, in any event, is without merit. (*People v Kinchen*, 60

NY2d 772; *People v Maher*, 89 NY2d 318; *People v Kass*, 25 NY2d 123; *People v Williams*, 28 AD3d 1005; *People v Green*, 272 AD2d 341; *People v Montgomery*, 216 AD2d 332; *People v Sealy*, 167 AD2d 362; *People v Grant*, 186 AD2d 267; *People v Melendez*, 74 AD3d 629; *People v Shelton*, 31 AD3d 791.) V. Defendant's claim that the prosecution's statements deprived him of his right to a fair trial is partially unpreserved for appeal and, in any event, is without merit. (*Petrucelli v Coombe*, 735 F2d 684; *Daye v Attorney Gen. of State of N.Y.*, 696 F2d 186, 464 US 1048; *People v Tardbania*, 72 NY2d 852; *People v James*, 35 AD3d 189; *People v Clark*, 161 AD2d 367; *People v Ashwal*, 39 NY2d 105; *People v Galloway*, 54 NY2d 396; *People v Williams*, 37 AD3d 626; *People v Stiff*, 60 AD3d 1094; *People v McHarris*, 297 AD2d 824.)

## OPINION OF THE COURT

JONES, J.

On September 4, 2007, a young male victim was found dead in the Fallkill Creek located in the City of Poughkeepsie. He was lying naked with his body badly beaten and a blanket, secured with tape, wrapped around his head. Two days after the police confirmed the identity of the victim, an eyewitness reported that she had observed three men—later identified as defendant, Earl Bell and Michael Thomas—severely beat a young man, who was later identified as the victim, in the alley and backyard of Bell's residence in the City of Newburgh.

On September 6th, the police executed a search warrant at Bell's residence and recovered blood from the inside stairwell and walls that led to the second floor apartment. The police arrested defendant the next day. During a subsequent search, the police recovered, among other things, carpeting and molding from the trunk of his car. The testing of those items revealed the presence of defendant's blood on the stairway and walls at Bell's residence and the presence of the victim's blood on the carpeting and molding of defendant's car. Additionally, cell phone records and cell site information obtained from defendant's, Bell's and Thomas's cellular phones showed that the three men were in contact with each other in the hours before the victim's beating and that Bell was in the Poughkeepsie area at 11:32 P.M. on September 3rd.

Defendant, along with Bell and Thomas, was charged with, among other things, three counts of murder in the second degree (intentional, felony and depraved indifference) and kidnapping

in the first degree. At trial, two witnesses—Bell's neighbor and her friend—testified that they saw defendant, with other men, walk into Bell's backyard and then heard sounds like someone was getting hit. They also heard the victim yelling and screaming, and identified defendant exiting the backyard after the yelling and screaming had ceased. They estimated that the beating lasted approximately 10 minutes or more. Two witnesses close to Bell—his wife and a close friend—testified that defendant and Thomas, in the presence of Bell, beat the victim for several minutes. Bell's friend further testified that the three men removed the victim's clothing, wrapped him in a blanket and drove off with the victim in defendant's vehicle. He heard the victim struggling to breathe while wrapped in the blanket. Defendant testified that his codefendants beat the victim and he assisted them by transporting the victim in the trunk from his vehicle to a creek in Poughkeepsie—a distance of some 18 miles.

The expert medical testimony revealed that (1) the victim had vomited while the blanket was wrapped around his head and (2) he died from "[m]ultiple blunt impact trauma to the head and torso." The chief medical examiner also opined that the victim lived for an hour or two after he had aspirated the vomit.

At the close of trial, defendant moved to dismiss several charges. Defendant argued that, without knowing when the victim died, the evidence did not support a depraved indifference murder charge pursuant to *People v Suarez* (6 NY3d 202 [2005]). Defendant also argued for the dismissal of the felony murder and kidnapping charges because the alleged act of kidnapping, pursuant to the merger doctrine, was not a separate and distinct act from the acts alleged to constitute murder. The trial court denied defendant's motion.

The jury acquitted defendant of intentional murder, but convicted him of, among other things, depraved indifference murder, felony murder and kidnapping in the first degree.[1] The Appellate Division affirmed (82 AD3d 1002 [2011]). It concluded that the evidence was legally sufficient to support defendant's conviction for depraved indifference murder. It also held the merger doctrine inapplicable to the felony murder and kidnapping convictions, concluding that "[t]he acts constituting the kidnapping were discrete" (*id.* at 1003). The court rejected defendant's other contentions as either meritless or unpreserved.

---

1. Codefendant Bell was tried separately and similarly convicted. Codefendant Thomas pleaded guilty.

A Judge of this Court granted defendant leave to appeal. We modify, by reducing the conviction of depraved indifference murder to manslaughter in the second degree, and otherwise, affirm.

"A person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). Depraved indifference murder "is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*People v Feingold*, 7 NY3d 288, 296 [2006]). The culpable mental state, contrasting it from the intent to take one's life, is such that one is "recklessly indifferent, depravedly so, to whether" the injury to or death of another occurs (*People v Gonzalez*, 1 NY3d 464, 468 [2004]). "As the drafters of the Penal Law put it, depraved indifference murder is 'extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness' " (*People v Payne*, 3 NY3d 266, 272 [2004]).

Here, the victim was beaten for approximately 10 minutes, or more, to the extent that he died eventually from "[m]ultiple blunt impact trauma to the head and torso." The People did not demonstrate that defendant evinced utter disregard for the victim's life to the extent that he did not care whether the victim was killed. Although defendant was acquitted of intentional murder, the evidence tends to support the conclusion that he intended to harm the victim. Recklessness, an element present in both depraved indifference murder and second degree manslaughter, exists when a person "is aware of and consciously disregards a substantial and unjustifiable risk that [a] result [defined by statute] will occur" (Penal Law § 15.05 [3]).[2] Here, the jury, in convicting defendant, concluded that he acted recklessly in causing the death of the victim. Because the evidence supports the conclusion that defendant was aware of and consciously disregarded the substantial and unjustified risk that his conduct could cause the death of the victim, reducing the depraved indifference murder conviction to manslaughter in the second degree is appropriate (*see also People v Atkinson*, 7 NY3d 765, 766-767 [2006]).

---

2. "A person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person" (Penal Law § 125.15 [1]).

Pursuant to Penal Law § 135.25 (3), a person who abducts another person is guilty of kidnapping in the first degree when "[t]he person abducted dies during the abduction or before he is able to return or to be returned to safety." Defendant contends that he should not be held criminally responsible for kidnapping in the first degree because the acts alleged to constitute kidnapping were merely incidental to and merged with the act of killing the victim.

The so-called merger doctrine "is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them" (*People v Cassidy*, 40 NY2d 763, 767 [1976]). The doctrine arose out of "an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty," where defendant was charged with kidnapping and the acts appeared to be no more than a rape or robbery (*id.* at 765).[3] In *Cassidy*, the Court observed that the Legislature, in the 1967 Revision of the Penal Law, "took note of the underlying problem and enacted a provision specifically requiring that for kidnapping in the first degree the abduction must be 'for a period of more than twelve hours' " (*id.* at 766 [the revision pertains to subdivision (2) of section 135.25]).[4] The *Cassidy* Court, deciding whether the merger doctrine applied to kidnapping in the second degree (Penal Law § 135.20)[5] reasoned that while "the 12-hour durational requirement of section 135.25 effectively renders application of the merger doctrine unnecessary with respect to prosecution on charges of kidnapping in the first degree," the

---

**3.** Prior to the 1967 Revision of the Penal Law, the Court, in *People v Levy* (15 NY2d 159 [1965]), reversed the defendant's kidnapping conviction and dismissed the charge. The Court observed that the kidnapping statute broadly encompassed any confinement and "could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes." The Court concluded that "[i]t is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping" (*id.* at 164).

**4.** Penal Law § 135.25 (2) provides that a person is guilty of first degree kidnapping when "[h]e restrains the person abducted for a period of more than twelve hours with intent to," among other things, injure or sexually abuse another or commit a felony.

**5.** "A person is guilty of kidnapping in the second degree when he abducts another person" (Penal Law § 135.20).

amendment, however, did not eliminate the merger doctrine's application (*id.*).

Here, the merger doctrine does not come into play as the People demonstrated that the acts constituting kidnapping were separate and distinct from the prior acts which led to the victim's death. The evidence reveals that defendant placed the victim in the trunk of his car and subsequently dumped the victim in a shallow creek approximately 18 miles away, after the beating of the victim occurred. An eyewitness testified that the victim was struggling to breathe prior to being placed in the trunk of the vehicle. The medical testimony explained that the victim died approximately one to two hours after he had vomited in the blanket wrapped around his head. Thus, sufficient evidence exists for the jury to have concluded that the victim was alive at the time he was taken and that he died before he was able to return or be returned to safety. The beating of the victim, and his subsequent death, were discrete and distinct acts separate from the taking of the victim and his asportation to the creek (*see People v Black*, 18 AD2d 719, 720 [2d Dept 1962] [the kidnapping occurred after the robbery; thus defendant was not "guilty of a single and inseparable act"]; *see also People v Levy*, 15 NY2d 159, 164, 164-165 [1965] [explaining that the kidnapping statute "literally embraced in its terms any restraint" and concluded that the Court must "limit the application of the kidnapping statute to 'kidnapping' in the conventional sense in which that term has now come to have acquired meaning"]). Therefore, the acts subsequent to the beating—namely, the asportation of the victim and his death during the asportation or prior to his return—support the separate convictions of kidnapping in the first degree and felony murder. Defendant's remaining contentions, to the extent that they are properly raised on appeal and preserved for review, are meritless.

Accordingly, the order of the Appellate Division should be modified by reducing defendant's conviction of depraved indifference murder in the second degree to manslaughter in the second degree and remitting to County Court for resentencing and, as so modified, affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order modified, etc.