# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

977

KA 10-00399

PRESENT: FAHEY, J.P., PERADOTTO, LINDLEY, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

ALAN L. JONES, DEFENDANT-APPELLANT.

---

D.J. & J.A. CIRANDO, ESQS., SYRACUSE (JOHN A. CIRANDO OF COUNSEL), FOR DEFENDANT-APPELLANT.

GREGORY S. OAKES, DISTRICT ATTORNEY, OSWEGO, FOR RESPONDENT.

---

Appeal from a judgment of the Oswego County Court (Walter W. Hafner, Jr., J.), rendered November 16, 2009. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reducing the conviction of murder in the second degree (Penal Law § 125.25 [2]) to manslaughter in the second degree (§ 125.15 [1]) and vacating the sentence and as modified the judgment is affirmed, and the matter is remitted to Oswego County Court for sentencing on the conviction of manslaughter in the second degree.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [2] [depraved indifference murder]), defendant contends, inter alia, that the evidence is legally insufficient to support the conviction. We agree.

Turning first to defendant's legal sufficiency contention, we conclude that, contrary to the People's assertion, this issue is preserved for our review because the Trial Judge "plainly was aware of, and expressly decided, the question raised on appeal" concerning whether the evidence is legally sufficient to support the conviction (*People v Eduardo*, 11 NY3d 484, 493; *see* CPL 470.05 [2]; *People v Prado*, 4 NY3d 725, 726, *rearg denied* 4 NY3d 795). With regard to the merits, Penal Law § 125.25 (2) provides that "[a] person is guilty of murder in the second degree when[,] . . . [u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." That crime " 'is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not' "

(*People v Feingold*, 7 NY3d 288, 296). "The culpable mental state, contrasting it from the intent to take one's life, is such that one is 'recklessly indifferent, depravedly so, to whether' the injury to or death of another occurs" (*People v Bussey*, 19 NY3d 231, 236, quoting *People v Gonzalez*, 1 NY3d 464, 468).

It is well settled " 'that, except in rare and extraordinary circumstances, . . . one person's attack on another, no matter how violent or how great the risk of harm it creates, does not rise to the level of depravity and indifference to life contemplated by the statutes defining crimes committed under circumstances evincing a depraved indifference to human life' " (*People v Boutin*, 81 AD3d 1399, 1400, *lv denied* 17 NY3d 792; *see People v Taylor*, 15 NY3d 518, 522; *People v Suarez*, 6 NY3d 202, 210-211). Indeed, "where a defendant's conduct endangers only a single person, to sustain a charge of depraved indifference there must be proof of 'wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts' " (*People v Coon*, 34 AD3d 869, 870, quoting *Suarez*, 6 NY3d at 213; *see Boutin*, 81 AD3d at 1400). The Court of Appeals has explained that there are two recurring "fact patterns in which a one-on-one killing could result in a depraved indifference conviction" (*Taylor*, 15 NY3d at 522). "The first is 'when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die' " (*id*., quoting *Suarez*, 6 NY3d at 212). "The second is when the 'defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim' " (*id.* at 523, quoting *Suarez*, 6 NY3d at 212).

The facts of this case do not fit within either of the aforementioned fact patterns. The first fact pattern is inapposite here inasmuch as the evidence at trial established that defendant did not abandon the victim and, instead, demonstrated that defendant called 911 regarding the victim's asphyxiation, administered CPR and was present at the scene when the authorities arrived. The second fact pattern is likewise inapposite to this case inasmuch as the evidence did not establish that defendant "engage[d] in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*id.* [internal quotation marks omitted]). Indeed, a treating emergency medical technician (EMT) testified that he conducted a "head to toe" examination of the victim, but found no injuries of note other than marks to her neck. Another EMT and a flight paramedic each testified that they did not see any injuries other than the marks on the victim's neck. Moreover, although the Medical Examiner testified that she noticed bruising on the victim's left forearm, left knee and left leg, she opined that those injuries "occurred at or about the time [the victim] was found unresponsive" and further testified that the victim could not have been strangled for a period of more than five minutes. Based on the above, we conclude that the conviction of depraved indifference murder is not supported by legally sufficient evidence (*see id.; see also*

*Bussey*, 19 NY3d at 236; *see generally People v Bleakley*, 69 NY2d 490, 495).

We now turn to the issue of the remedy.  Here, the jury convicted defendant of depraved indifference murder, and as stated above one is guilty of that crime when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]).  In convicting defendant, the jury concluded that defendant acted recklessly in causing the victim's death, i.e., that he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that [death would] occur" (§ 15.05 [3]).  Recklessness is also an element of manslaughter in the second degree (*see* § 125.15 [1]).  Thus, because the evidence supports the conclusion that "defendant's actions, although not depraved, were reckless" (*People v Atkinson*, 7 NY3d 765, 767), "reducing the depraved indifference murder conviction to manslaughter in the second degree is appropriate" (*Bussey*, 19 NY3d at 236; *see Atkinson*, 7 NY3d at 766-767; *People v Little*, 83 AD3d 1389, 1392; *see also* CPL 470.15 [2] [a]).  We therefore modify the judgment accordingly.

Defendant's further contention that the verdict is against the weight of the evidence lacks merit.  Preliminarily, we note that, given our determination that the evidence is legally insufficient to support the depraved indifference murder conviction, defendant's contention with regard to that conviction is moot.  However, viewing the evidence in light of the elements of the lesser included offense of manslaughter in the second degree (*see People v Danielson*, 9 NY3d 342, 349), we conclude that a verdict convicting defendant of that crime would not be against the weight of the evidence (*see generally People v Pallagi*, 91 AD3d 1266, 1270; *People v Lettley*, 64 AD3d 901, 903, *lv denied* 13 NY3d 836; *see generally People v Bleakley*, 69 NY2d 490, 495).  "Generally, [w]e accord great deference to the resolution of credibility issues by the trier of fact because those who see and hear the witnesses can assess their credibility and reliability in a manner that is far superior to that of reviewing judges who must rely on the printed record" (*People v Vanlare*, 77 AD3d 1313, 1315, *lv denied* 15 NY3d 956 [internal quotation marks omitted]; *see People v Curry*, 82 AD3d 1650, 1651, *lv denied* 17 NY3d 805).  Under these circumstances, we see no reason to disturb the jury's credibility determinations.

Additionally, we reject defendant's contention that he was denied a fair trial by the cumulative effect of alleged errors at trial, i.e., courtroom outbursts and various actions of County Court, defense counsel and the prosecutor.  Defendant's contention that the court abused its discretion by inadequately addressing four outbursts by spectators is unpreserved for our review (*see* CPL 470.05 [2]), and in any event lacks merit (*see People v Pantoliano*, 127 AD2d 857, 857, *lv denied* 70 NY2d 715; *People v Manners*, 120 AD2d 680, 680).  The further contention of defendant that the court should have granted his motion for recusal is unpreserved for our review inasmuch as defendant did not raise before the motion court the ground for recusal that he

asserts on appeal (*see* CPL 470.05 [2]; *People v Strohman*, 66 AD3d 1334, 1335-1336, *lv dismissed* 13 NY3d 911), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).  Defendant failed to preserve for our review his challenge to the jury instructions (*see* CPL 470.05 [2]), and in any event that contention lacks merit inasmuch as " 'the jury, hearing the whole charge, would gather from its language the correct rules [that] should be applied in arriving at [a] decision' " (*People v Ladd*, 89 NY2d 893, 895, quoting *People v Russell*, 266 NY 147, 153; *see People v Bartlett*, 89 AD3d 1453, 1454, *lv denied* 18 NY3d 881).  Viewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation, we reject defendant's further contention that he was denied effective assistance of counsel (*see generally People v Baldi*, 54 NY2d 137, 147).  We also conclude that any alleged prosecutorial misconduct has not "caused . . . substantial prejudice to the defendant" (*People v Rubin*, 101 AD2d 71, 77, *lv denied* 63 NY2d 711).

Finally, we reject the contention of defendant that the judgment should be reversed because of the improper conduct of the jury. Defendant's contentions that the jury was confused with respect to the court's instructions regarding depraved indifference murder, that certain jurors considered evidence not introduced at trial, and that one juror was "browbeaten" into his verdict are properly before us (*see People v Gibian*, 76 AD3d 583, 587, *lv denied* 15 NY3d 920), but they lack merit inasmuch as " 'a jury verdict [generally] may not be impeached by probes into the jury's deliberative process' " (*People v Jerge*, 90 AD3d 1486, 1486, quoting *People v Maragh*, 94 NY2d 569, 573). A verdict, however, may be impeached by a showing of improper influence (*see id.*).  Nevertheless, defendant's further contention that the jury was improperly swayed by outside influences is not properly before us inasmuch as defendant did not move to set aside the verdict based on that alleged jury misconduct (*see People v Bautista*, 25 AD3d 341, 341, *lv denied* 6 NY3d 809).  In any event, defendant's complaints of alleged outside influence are unsupported by the record.

Entered:  November 9, 2012                    Frances E. Cafarell
                                              Clerk of the Court