OPINION OF THE COURT
Friedman, J.
This appeal from a conviction for reckless endangerment in the first degree presents the recurring issue of what constitutes *128 “circumstances evincing a depraved indifference to human life.” We find that the jury’s determination that this element of the offense was proven comports with the weight of the evidence.
Defendant admits that, during the morning rush hour of August 15, 2005, he threw bottles and plates from a 26th-floor hotel balcony overlooking Seventh Avenue, in the vicinity of Penn Station. Admittedly, defendant — who was then 24 years old — engaged in this callous and self-evidently dangerous behavior for no purpose other than to amuse himself and his friends. Although defendant claims that he was intoxicated at the time, videotapes of the incident show no evidence of significant impairment of his physical coordination; he successfully executed two cartwheels while holding a beer bottle, and sprinted toward the balcony’s ledge, with no hint of staggering, while steadily holding a glass in his hand. As to his mental faculties, defendant admits that, in spite of his drinking, he had enough of his wits about him to suspend his antics when he saw police on the street below and on the roof of the building across Seventh Avenue, only to resume tossing objects off the balcony when he saw that the police had left the area. Moreover, at trial, defendant testified that he could still “remember everything [he] did” that morning.
Based on uncontroverted evidence of the conduct described above, a jury convicted defendant of reckless endangerment in the first degree, a crime of which a person is guilty “when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person” (Penal Law § 120.25). On appeal, defendant raises no objection to the instructions that the jury received, nor does he claim that any of the evidence presented against him was irrelevant or unfairly prejudicial. Further, he admits (as he did at trial) that, by throwing bottles and plates from a height of 26 stories above a public boulevard, he “recklessly engage[d] in conduct which create[d] a grave risk of death to another person,” thereby satisfying two of the three elements of first-degree reckless endangerment. Defendant argues, however, that the jury’s verdict was against the weight of the evidence to the extent he was found to have acted with “a depraved indifference to human life.” Therefore, contends defendant, his conviction should be reduced to reckless endangerment in the second degree (Penal Law § 120.20), a misdemeanor *129 having no depraved indifference element.[1] The dissent would accede to this request, opining that defendant’s conduct, while it was reckless and created a grave risk of death to others, “reflected [only] stupidity and drunken thoughtlessness,” not depraved indifference to human life. We disagree.
At the outset, in conducting a weight-of-the-evidence review, while we must determine whether the jury “ ‘failed to give the evidence the weight it should be accorded’ ” (People v Romero, 7 NY3d 633, 643 [2006], quoting People v Bleakley, 69 NY2d 490, 495 [1987]), still we should not “ ‘substitute [our]selves for the jury,’ ” whose determinations are entitled to “ ‘[g]reat deference’ ” based on its “ ‘opportunity to view the witnesses, hear the testimony and observe demeanor’ ” (Romero, 7 NY3d at 644, quoting Bleakley, 69 NY2d at 495). Here, given the great deference owed to the jury’s determinations, it cannot be said that the jury failed to give the evidence the weight it should be accorded in finding that defendant acted with depraved indifference to human life.
What sets depraved indifference apart from mere recklessness is that the former involves “an utter disregard for the value of human life — a willingness to act not because one intends harm, but because one simply doesn’t care whether grievous harm results or not” (People v Suarez, 6 NY3d 202, 214 [2005] [emphasis added]). “In other words, a person who is depravedly indifferent is not just willing to take a grossly unreasonable risk to human life — that person does not care how the risk turns out” (People v Lewie, 17 NY3d 348, 359 [2011]). It is in this abject indifference to the possible consequences of the conduct at issue that the “wickedness, evil or inhumanity” (Suarez, 6 NY3d at 214) of the depravedly indifferent actor lies. Moreover, “[t]he mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence” (People v Feingold, 7 NY3d 288, 296 [2006]). Thus, in this case, the jury’s finding that defendant acted with depraved indifference is not negated in any way by his apparent lack of a specific intention to harm anyone when he threw objects from the 26th-floor balcony. Rather, it is precisely because the jury could reasonably determine that defendant was aware of the risk he was *130 creating, and did not care whether or not that risk came to fruition, that the finding that he acted with depraved indifference should be upheld.
The grave risk of death created by defendant’s heinous conduct was glaringly obvious. Plainly, defendant could not have failed to appreciate what was likely to happen if a bottle or plate thrown from the height of 26 stories hit a pedestrian or the windshield of a motor vehicle that someone was driving. Nevertheless, defendant asks us to overturn the jury’s depraved indifference finding based on his alleged intoxication at the time of the incident and on his self-serving testimony that it simply “[d]idn’t cross [his] mind” that he was endangering the lives of the people below. The jury, however, had every right to discredit any implication by defendant that he did not contemplate that people on Seventh Avenue could be harmed by his conduct, even if he was somewhat under the influence of alcohol at the time. After all, by his own admission, defendant was sufficiently rational and self-aware to stop throwing things from the balcony when he saw police in the area, apparently looking for the source of the objects that were crashing onto the street below. And, given the physical coordination with which he performed cartwheels and other movements (as shown on the videotapes of the incident), and his professed clear recollection of the events of that morning, the notion that defendant was so profoundly inebriated as to be unaware of the grave danger obviously created by his actions can only be described as risible (see People v Wells, 53 AD3d 181, 191 [1st Dept 2008], lv denied 11 NY3d 858 [2008] [in affirming convictions for depraved-indifference murder and depraved-indifference assault, this Court noted that, although the defendant was “extremely intoxicated,” he “was not so impaired that he was unaware of what he had done”]; cf. People v Valencia, 14 NY3d 927, 928 [2010, Graffeo, J., concurring] [the evidence was insufficient to support a conviction for depraved indifference assault where the factfinder determined that the defendant, who caused an accident while driving with a blood alcohol level about three times the legal limit, “was so drunk that he was ‘oblivious’ to the danger he created”]).
At oral argument, defendant placed considerable reliance on People v Bussey (19 NY3d 231 [2012]), a case decided by the Court of Appeals after the briefs for this appeal were filed. In Bussey, the Court of Appeals reduced a conviction for depraved-indifference murder to second-degree manslaughter (which has *131 no depraved indifference element) where the victim was brutally beaten by the defendant and two other men for at least 10 minutes, after which the perpetrators rolled up the severely injured victim in a blanket, drove him to another city 18 miles away, and left him in a creek bed, where he was later found dead (see 19 NY3d at 234-235). Defendant argues that, because the conduct of the Bussey defendant was even more reprehensible than his own behavior in this case, the determination that depraved indifference was absent in Bussey necessarily means that depraved indifference was also absent here. Defendant is mistaken.
In Bussey, the Court of Appeals determined that the finding of depraved indifference could not stand, not because the defendant’s conduct was insufficiently “depraved,” but because that conduct did not evince “indifference” toward the victim— that is, “the evidence tend[ed] to support the conclusion that [the defendant] intended to harm the victim” (19 NY3d at 236). The intent to harm the victim (even if it did not rise to an actual intent to kill) was inconsistent with a finding of depraved indifference because, as the Court of Appeals explained in an earlier case:
“Depraved indifference murder is not a lesser degree of intentional murder. Moreover, someone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. . . . [A] defendant who intends to injure or kill a particular person cannot generally be said to be ‘indifferent’ — depravedly or otherwise — to the fate of that person” (Suarez, 6 NY3d at 211]).
In the present case, although defendant was plainly aware of the danger to which he was exposing people on the street below, there is no evidence that he specifically intended to harm anyone. Indeed, throughout this prosecution, defendant has understandably taken pains to emphasize that he never intended to harm anyone. Accordingly, here, unlike in Bussey, the jury’s finding that defendant acted with depraved indifference to the risk of death he was creating was fully supported by the evidence.
Finally, we reject defendant’s argument that his suppression motion should have been granted. The warrantless entry into his hotel room was justified by exigent circumstances (see People v McBride, 14 NY3d 440, 445-446 [2010], cert denied 562 *132 US —, 131 S Ct 327 [2010]). A visibly upset woman informed the police that she had just been raped and that the foreign visitor who had raped her, and whom she knew only by his first name, was staying in the hotel room. The police had probable cause to arrest defendant for a very serious charge, and they had reason to believe that he was still in the hotel room.[2] Regardless of whether defendant was aware that he was about to be arrested, there was a danger that he might choose to flee (see People v Williams, 181 AD2d 474, 476 [1992], lv denied 79 NY2d 1055 [1992]), or might simply check out of the hotel and return to his native country, rendering him nearly impossible to locate given the lack of pedigree information. Similarly, there was reason to believe that a drug used in commission of the alleged rape was in the room, and that defendant might dispose of it either to destroy evidence or for some other reason.
Additionally, the officers entered the hotel room peaceably, using the manager’s key, and the record does not establish that it would have been practical for the police to proceed by way of a warrant, by telephone or otherwise (see United States v Malik, 642 F Supp 1009, 1012 [SD NY 1986]). After the police entered, defendant gave his written consent to a search of the room, which yielded evidence relating to the reckless endangerment charge of which defendant was ultimately convicted. The People established the voluntariness of that consent by clear and convincing evidence (see generally People v Gonzalez, 39 NY2d 122, 128-131 [1976]), including evidence that the police informed defendant that he had the right to refuse to consent to a search. The record also supports the hearing court’s finding that the consensual search was attenuated from any illegality in the police entry.
Accordingly, the judgment of the Supreme Court, New York County (Lewis Bart Stone, J.), rendered February 10, 2011, convicting defendant, after a jury trial, of reckless endangerment in the first degree, and sentencing him to a term of one year, should be affirmed.

. Because defendant made only a pro forma, unelaborated motion for a trial order of dismissal, he failed to preserve any challenge to the legal sufficiency of the evidence. Accordingly, on appeal, he invokes only this Court’s power of weight-of-the-evidence review (CPL 470.15 [5]).

. At trial, defendant was acquitted of the rape charge.