# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**452**

**KA 11-00408**

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                           MEMORANDUM AND ORDER

NAKEEM ARCHIE, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PIOTR BANASIAK OF COUNSEL), FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), rendered December 17, 2010. The judgment convicted defendant, upon jury verdicts, of murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him, following two jury trials, of murder in the second degree (Penal Law § 125.25 [2]), assault in the first degree (§ 120.10 [3]), and two counts of criminal possession of a weapon in the second degree (§ 265.03 [3]). The jury at the first trial convicted defendant of one weapons offense and acquitted defendant of another weapons offense, but was unable to reach a verdict on the remaining counts. At the retrial, defense counsel stipulated to the admission of evidence regarding the weapons offense for which defendant had been convicted, and the jury convicted defendant of depraved indifference murder and depraved indifference assault, along with the remaining weapons offense.

Defendant contends that the evidence at the first trial was legally insufficient to establish that he committed depraved indifference murder and assault and thus that the second trial was barred by double jeopardy with respect to those two crimes (*see People v Scerbo*, 74 AD3d 1730, 1731, *lv denied* 15 NY3d 757). According to defendant, the shooting was "manifestly intentional" and thus not reckless, as is required for the depraved indifference crimes. He further contends that, in any event, the evidence at the second trial, which is substantially similar to that admitted at the first trial, is likewise not supported by legally sufficient evidence. We reject

defendant's contentions.  The evidence at both trials, when viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), establishes that on October 15, 2007, defendant was "jumped" at school by a fellow student who lived in Syracuse in the Pioneer Homes housing development, which is colloquially referred to as "the Bricks."  Three days later, defendant borrowed his friend's .22 caliber semi-automatic pistol.  According to defendant's friend, defendant was angry because "some guys from the Bricks" had "jumped" him.  Later that night, defendant had someone drive him to Pioneer Homes.  After exiting the vehicle, defendant walked across the street and entered the courtyard of the housing development, where he observed three people walking together.  Another person was in the vicinity.  Standing less than 20 feet away from the group of people, defendant fired between three and six shots in their direction.  One of the three people walking together was struck in the arm by a bullet and was seriously injured, and another person in the group was shot in the neck and died.  The victim who died had three bullet fragments in her neck, but it is unclear from the record whether she was struck by three separate bullets or one bullet that broke into pieces upon impact.  Defendant returned to the waiting vehicle and went home.  Defendant later told his friend from whom he had obtained the firearm that he "aired out the PH," referring to Pioneer Homes.  Defendant also said that, while in the courtyard, he saw a group of "dudes" and started shooting.  The .22 caliber handgun used in the shooting was recovered by the police from the home of defendant's friend, who testified against defendant at both trials in return for a promise of leniency on a drug charge in federal court.  Laboratory tests subsequently established that defendant's DNA was on the firearm.  When questioned by the police following his arrest, defendant admitted that he possessed the firearm on the night in question, but he denied shooting at anyone.  At both trials, the People called a witness who testified that he was in the vehicle with defendant when he was driven to Pioneer Homes on the night of the shooting.  In return for his testimony, that witness was allowed to plead guilty to a misdemeanor on a pending felony charge.

The relevant legal principles for evaluating the above trial evidence are well settled.  Depraved indifference is a mental state " 'best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not' " (*People v Heidgen*, 22 NY3d 259, 275, quoting *People v Feingold*, 7 NY3d 288, 296).  "Circumstantial evidence can be used to establish the necessary mens rea" (*Heidgen*, 22 NY3d at 275; *see People v Green*, 104 AD3d 126, 129).  Although shooting into a crowd of people is a " '[q]uintessential example[ ]' " of depraved indifference (*People v Ramos*, 19 NY3d 133, 136; *see People v Suarez*, 6 NY3d 202, 214; *People v Payne*, 3 NY3d 266, 272, *rearg denied* 3 NY3d 767; *People v Callender*, 304 AD2d 426, 426, *lv denied* 100 NY2d 641), the mere presence of others does not transform an otherwise intentional shooting into a depraved indifference murder or assault (*see generally People v Garrison*, 39 AD3d 1138, 1139-1140, *lv denied* 9 NY3d 844).  Rather, the point of distinction between a criminal act committed with intent and a criminal act committed with depraved indifference is that the former

is motivated by the "conscious objective" to cause death or serious physical injury, while the latter is "recklessly indifferent, depravedly so, to whether death [or serious physical injury] occurs" (*People v Gonzalez*, 1 NY3d 464, 468).

We conclude that this case is one of those "rare" cases where the defendant properly could have been charged with both intentional and depraved indifference murder (*Suarez*, 6 NY3d at 215). Stated otherwise, and contrary to defendant's contention, he is not "guilty of an intentional shooting or no other" (*People v Wall*, 29 NY2d 863, 864). The evidence summarized above, when viewed in the light most favorable to the People, establishes a "valid line of reasoning and permissible inferences which could lead a rational person" to conclude that defendant, by shooting indiscriminately at a group of people that he did not know, acted with depraved indifference to human life rather than with intent to kill (*People v Bleakley*, 69 NY2d 490, 495; *see People v Campbell*, 33 AD3d 716, 718-719, *lv denied* 8 NY3d 879; *Callender*, 304 AD2d at 426). In addition, viewing the evidence at the second trial in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we further conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495). Although a different verdict with respect to the depraved indifference counts would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (*see generally id.; People v Lowe*, 113 AD3d 1133, 1133-1134).

We reject defendant's further contention that he was deprived of effective assistance of counsel at the second trial, during which his defense counsel stipulated that, three days after the shooting at the Pioneer Homes, defendant possessed a loaded .22 caliber semi-automatic pistol and fired it nine times in the vicinity of a gas station in Syracuse. Defendant had been convicted of criminal possession of a weapon in the second degree for that incident at the first trial. We agree with defendant that evidence that he had fired the weapon on another occasion would have been inadmissible at the second trial absent defense counsel's stipulation, and thus that there was no legitimate strategy behind defense counsel's decision to enter into the stipulation. Nevertheless, we deem defense counsel's performance not otherwise deficient, and we conclude that the above single error was not so egregious as to deprive defendant of his right to a fair trial (*see People v Turner*, 5 NY3d 476, 480; *People v Cosby*, 82 AD3d 63, 67, *lv denied* 16 NY3d 857). Defendant does not take issue with defense counsel's performance at the first trial, which resulted in a hung jury on three of the five counts and, viewing defense counsel's representation at the second trial in its entirety, we conclude that she provided defendant with meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147; *People v Williams*, 98 AD3d 1234, 1235-1236, *lv denied* 21 NY3d 947).

Finally, we perceive no basis to modify defendant's sentence as a

matter of discretion in the interest of justice (*see* CPL 470.15 [6]
[b]).